Otis PATTERSON, Plaintiff,

v.

Max FULLER, Defendant.

Civ. A. No. C86–15R.

United States District Court,
N.D. Georgia,
Rome Division.

Feb. 17, 1987.

William W. Keith, III, Chatsworth, Ga., for plaintiff.

J. Melvin England, Atlanta, Ga., for defendant.

## ORDER

HAROLD L. MURPHY, District Judge.

Otis Patterson, the father of the deceased, has filed a complaint against Max Fuller pursuant to 28 U.S.C. § 1343, 42 U.S.C. § 1983 and 42 U.S.C. § 1988, alleging Fuller violated his son's rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. Count One alleges Fuller used excessive and barbarous force in attempting to arrest and in arresting Philip Patterson. Count Two alleges Fuller was grossly negligent in attempting to arrest and in arresting Philip Patterson. Count Three alleges Fuller was negligent in attempting to arrest and in arresting Philip Patterson.

The action is now before the Court on defendant's motion for summary judgment. In moving for summary judgment, defendant first makes a very general argument that a negligent tort does not rise to the level of a constitutional tort such as to be cognizable under 42 U.S.C. § 1983. The remainder of defendant's brief is devoted to the argument that he is entitled to the defense of qualified immunity because he acted in good faith based on reasonable grounds. For the reasons set forth below, defendant's motion is GRANTED in part and DENIED in part.

The following facts are undisputed. At approximately 1:00 a.m., on October 6, 1985, Glenn Lee Gentry and Philip Patterson escaped from the Gordon County, Georgia jail. Gentry had just pled guilty to three armed robberies and one motor vehicle theft, and Patterson was serving a one year sentence under a plea of guilty to a charge of habitual traffic violator. Gentry and Patterson hid in a house of a friend and were later taken to the trailer home of Patterson's sister. Both fugitives later went to another mobile home located in Pickens County, Georgia. It was then that law enforcement authorities were notified as to where Gentry and Patterson were staying.

The sheriff of Pickens County requested assistance in apprehending the escapees. Max Fuller, a Gordon County Sheriff's Department deputy, and Sgt. DeWayne Broome of the Georgia State Patrol, were both sent to Pickens County. All assisting law enforcement officers were warned to expect the two fugitives to be armed.

Upon reaching the Pickens County location, Fuller and Sgt. Broome entered the mobile home. Sgt. Broome was armed with a shotgun and a .357 magnum revolver, and Fuller was armed with a .38 service revolver. The officers first saw Glenn Lee Gentry, and Sgt. Broome apprehended him and made him lie on the floor. Philip Patterson was found standing in the bedroom of the mobile home, and Fuller, while standing in the hallway, commanded him to come out with his hands up. Patterson walked from the bedroom to the edge of the hallway but then made a move to go behind the door. Fuller immediately cocked his pistol and told Patterson to halt. Patterson obeyed the command and walked down the hallway towards Fuller. Fuller, holding his cocked revolver in both hands, began walking backwards and ordered Patterson to go into the living room and lie down on the floor next to Gentry, who was lying face down on the floor. As Patterson did so, Sgt. Broome, holding his shotgun, was standing over Gentry, and Fuller was standing at the head of Patterson. While Patterson was on the floor, he moved his arm and Fuller reacted by moving away with the result being that he stepped on a glass ashtray which was sitting on the floor. When Fuller stepped on the ashtray, he lost his balance and it was at this time that his cocked revolver fired. Fuller's bullet hit Patterson in the head, and Patterson died as a result.

"Summary judgment is a lethal weapon, and courts must be mindful of its aims and targets and beware of overkill in its use." *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 612 (5th Cir.1967). Fed.R.Civ.P. 56(c) authorizes summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the burden of demonstrating that no dispute as to any material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Bingham, Ltd. v. United States*, 724 F.2d 921, 924 (11th Cir.1984). In assessing whether the movant has met this burden,

the evidence and all factual inferences should be viewed in the light most favorable to the party opposing the motion. *See Bradbury v. Wainwright*, 718 F.2d 1538, 1543 (11th Cir.1983). And in deciding a motion for summary judgment, it is no part of the court's function to decide issues of genuine material fact but solely to determine whether there is such an issue to be tried. *See Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Warrior Tombigbee Transportation Co. v. M/V Nan Fung*, 695 F.2d 1194, 1196 (11th Cir.1983). A District Court "can only grant summary judgment 'if *everything* in the record ... demonstrates that no genuine issue of material fact exists.' " *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir.1986) quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir.1980) (emphasis in original).

Since defendant did not specifically address the constitutional deprivations that were alleged in the complaint, the Court must review the law as it pertains to each of the alleged constitutional violations so as to determine whether defendant is entitled to summary judgment.

42 U.S.C. § 1983 reads in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

The two essential elements which a plaintiff must prove in order to state a claim under Section 1983 are:

(1) that the conduct complained of was committed by a person acting under color of state law, and;

(2) that this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States.

*Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981).

As to the first element, plaintiff maintains, and defendant does not dispute, that defendant Fuller was acting under color of state law when he caused the death of Philip Patterson. Therefore, the first issue to be decided is whether there are genuine issues of material fact concerning the conduct of defendant Fuller as it pertains to each alleged violation of the Constitution. Specifically, the Court must determine whether something less than intentional conduct may serve as the basis of a Section 1983 action.

## THE ALLEGED FIFTH AND EIGHTH AMENDMENT VIOLATIONS

■ As to plaintiff's Fifth Amendment claim, the Court assumes that it is plaintiff's position that Philip Patterson's substantive due process right to be free from excessive use of force by government officials was violated. However, the evidence before the Court indicates that defendant Fuller was a sheriff's deputy employed by Gordon County, Georgia. There being no allegation that a federal actor was involved in the alleged constitutional deprivations suffered by Philip Patterson, the Court holds as a matter of law that plaintiff does not have a Fifth Amendment due process claim against Fuller. *Fidelity Financial Corp. v. Fed. Home Loan Bank*, 792 F.2d 1432, 1435 (9th Cir.1986) (Fifth Amendment right to due process protects only against federal governmental action); *Metz v. McKinley*, 583 F.Supp. 683, 688 n. 4 (S.D. Ga.1984), *aff'd* 747 F.2d 709 (11th Cir.1984) (Fourteenth Amendment is inapplicable to conduct of federal employees.)

■ Plaintiff also alleges Philip Patterson suffered cruel and unusual punishment such as to violate his Eighth Amendment rights. Eighth Amendment rights attach only upon conviction. *Ingraham v. Wright*, 430 U.S. 651, 659–71, 97 S.Ct. 1401, 1406–12, 51 L.Ed.2d 711 (1977). It is undisputed that although Patterson had been convicted and had been in jail, at the time of his death he was not in jail; he was an escapee. Because Patterson had escaped, the Court finds the Eighth Amendment to be inapplicable. Also, "because there is no indication that the use of deadly force was intended to punish ... there is no valid claim under the Eighth Amendment." *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1, 22 (1985) (O'Conner, J., dissenting) citing *Bell v. Wolfish*, 441 U.S. 520, 538–539, 99 S.Ct. 1861, 1873–1874, 60 L.Ed.2d 447 (1979). Accordingly, the Court holds as a matter of law that plaintiff does not have an Eighth Amendment claim against Fuller.

## THE ALLEGED FOURTEENTH AMENDMENT VIOLATION

■ In *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), the Supreme Court dealt with an action brought under Section 1983 by a prison inmate to recover damages for injuries he sustained when he stepped on a pillow negligently left on a stairway by the defendant sheriff's deputy. Plaintiff contended that such negligence deprived him of his liberty interest in freedom from bodily injury. Pointing out that the Due Process Clause was intended "to prevent governmental power from being 'used for purposes of oppression,'", 474 U.S. at ——, 106 S.Ct. at 665, 88 L.Ed.2d at 668 quoting *Murray's Lessee v. Hoboken Land & Improvement Co*, 59 U.S. (18 How.) 272, 277, 15 L.Ed. 372 (1856), the Court concluded that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property." *Id.*, 474 U.S. at ——, 106 S.Ct. at 663, 88 L.Ed.2d at 666 (emphasis in original). While adhering to its conclusion made in *Parratt v. Taylor* that Section 1983 contains no state of mind requirement independent of that necessary to state a violation of the underlying constitutional right, the Court overruled *Parratt* "to the extent that it states that mere lack of due care by a state official may 'deprive' an individual of life, liberty or property under the Fourteenth Amendment." *Id.*, 474 U.S. at ——, 106 S.Ct. at 665, 88 L.Ed.2d at 668.

The Court noted, however, that the case before it afforded "no occasion to consider whether something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protections of the Due Process Clause." *Id.* at —— n. 3, 106 S.Ct. at 667 n. 3, 88 L.Ed.2d at 670 n. 3.

■ In *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), a case decided on the same day as *Daniels,* the Court held that an inmate's suit against prison officials to recover for injuries he suffered when they negligently failed to protect him from another inmate "simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent." *Id.* 474 U.S. at ——, 106 S.Ct. at 670, 88 L.Ed. at 682. "As we held in *Daniels,* the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials." 474 U.S. at ——, 106 S.Ct. at 670, 88 L.Ed.2d at 683.

■ Given the holdings of *Daniels* and *Davidson,* it is clear the portion of Count Three of plaintiff's complaint which alleges Philip Patterson's Fourteenth Amendment due process rights were violated cannot stand for the reason that plaintiff only alleges negligence on the part of defendant. Therefore, defendant's motion for summary judgment as to this aspect of plaintiff's complaint is GRANTED. *See Dunster v. Metropolitan Dade County,* 791 F.2d 1516 (11th Cir.1986) (Civil rights action brought against police officer arising out of incident wherein off-duty police officer allegedly shot decedent at a bar. There, the Court reversed a jury verdict in favor of plaintiff, holding that a Fourteenth Amendment claim could not be sustained on a theory which was solely premised on the negligence of the officer.)

Plaintiff has also alleged a Fourteenth Amendment deprivation in Counts One and Two of his complaint. Count One alleges excessive force was used in the arrest of Patterson, and Count Two alleges defendant Fuller was grossly negligent in his attempt to arrest Patterson. Plaintiff has offered the affidavit of George L. Kirkham, an Associate Professor of Criminology at the School of Criminology, Florida State University, which states that Fuller's actions "were grossly violative of universally accepted standards and procedures of the law enforcement profession." Specifically, it is Kirkham's opinion that Fuller's actions were grossly negligent with respect to:

(1) The safe handling of police firearms in field enforcement situations, and

(2) the utilization of proper felony apprehension techniques.

For purposes of discussion, Counts One and Two will be analyzed together.

Courts, in analyzing whether an official's use of force violates a plaintiff's Fourteenth Amendment substantive due process rights or merely constitutes a tort, most often purport to use the test set out in *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Writing for the Second Circuit, Judge Friendly set out the following framework:

In determining whether the constitutional line has been crossed, a court must look to such factors as [1] the need for the application of force, [2] the relationship between the need and the amount of force that was used, [3] the extent of injury inflicted, and [4] whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Id.* at 1033.

At least nine other Circuit Courts of Appeals have used this framework to determine whether the constitutional line had been crossed in cases where an individual alleged that he was subjected to unjustified abuse at the hands of governmental officials or that such officials used excessive force on him. *Franklin v. Aycock,* 795 F.2d 1253, 1258 (6th Cir.1986); *McRorie v. Shimoda,* 795 F.2d 780, 785 (9th Cir.1986); *Justice v. Dennis,* 793 F.2d 573, 578 (4th Cir.1986); *Burton v. Livingston,* 791 F.2d

97, 100 (8th Cir.1986); *Leslie v. Ingram,* 786 F.2d 1533, 1536 (11th Cir.1986); *Fernandez v. Leonard,* 784 F.2d 1209, 1216 (1st Cir.1986); *Byrd v. Clark,* 783 F.2d 1002, 1006 (11th Cir.1986); *Hendrix v. Matlock,* 782 F.2d 1273, 1274 (5th Cir.1986); *Coon v. Ledbetter,* 780 F.2d 1158, 1163 (5th Cir.1986); *Fundiller v. City of Cooper City,* 777 F.2d 1436, 1440 (11th Cir.1985); *Gumz v. Morissette,* 772 F.2d 1395, 1400 (7th Cir.1985), *cert denied,* — U.S. —, 106 S.Ct. 1644, 90 L.Ed.2d 189 (1986); *Wise v. Bravo,* 666 F.2d 1328, 1333 (10th Cir. 1981).

Although the factors delineated in *Johnson* were intended to be useful guidelines in determining whether substantive limitations on governmental force have been exceeded, there is considerable difference of opinion among the Circuit Courts as to the relevance of the governmental official's motivation in using force. On one extreme there are the Fifth, Seventh and Tenth Circuits which require a plaintiff to show that an official's actions were "inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience" for a claim of excessive force to be redressed under Section 1983. *Hendrix,* 782 F.2d at 1274; *Coon,* 780 F.2d at 1163; *Gumz,* 772 F.2d at 1400; *Wise,* 666 F.2d at 1333. *See also Waggoner v. Mosti,* 792 F.2d 595, 600 (6th Cir.1986) (Krupansky, J., dissenting) (A plaintiff may not prevail on his substantive due process claim unless he proves that the arresting officers acted with an intent to use excessive force.) At the other extreme is the Fourth Circuit's holding that the last factor of the *Johnson* test should be considered, but should not be a requirement for imposing liability. *Justice,* 793 F.2d 573. Noting that the Supreme Court in *Daniels* had refused to discuss whether something less than intentional conduct, such as recklessness or 'gross negligence' is enough to trigger the protections of the Due Process Clause, the *Justice* court held that a law enforcement officer may be liable in a Section 1983 excessive force claim "for not only malicious, but also reckless,

wanton, or grossly negligent conduct," *Id.* at 579. "Proof of bad motive, evil intent, or 'ulterior purpose' is not required." *Id.* at 578 citing *Jenkins v. Averett,* 424 F.2d 1228, 1232–33 (4th Cir.1970). Other Circuits do not address the issue of whether the governmental official acted maliciously or sadistically because they apparently conclude that such a determination is unnecessary when a finding can be made that the official acted deliberately or intentionally. *See e.g. New v. City of Minneapolis,* 792 F.2d 724 (8th Cir.1986) (If sufficiently egregious, a deliberate use of excessive force can implicate the substantive due process right to be free from abusive governmental acts 'offensive to human dignity.'); *Fernandez,* 784 F.2d 1209 (Although there was nothing in the record indicating that defendant F.B.I. agent acted maliciously in shooting the plaintiff, the Court found that because defendant did not have a good faith belief that he shot in self-defense, then the shooting was intentional and therefore plaintiff had alleged a valid cause of action for the raw abuse of police power.); *Fiacco v. City of Rensselaer, N.Y.,* 783 F.2d 319 (2nd Cir.1986) (A showing of maliciousness was not required where officers knew they were violating arrestee's constitutional rights.)

The Court's review of the relevant law in this Circuit begins with *Gilmere v. City of Atlanta, Ga.,* 774 F.2d 1495 (11th Cir.1985) (en banc), *cert. denied,* — U.S. —, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986), and — U.S. —, 106 S.Ct. 1993, 90 L.Ed.2d 673 (1986). In *Gilmere* the Eleventh Circuit did not address the issue of whether a governmental official must be found to have acted maliciously before liability may be imposed on him since it viewed the situation before it as one involving "the intentional infliction of personal injury and death by means of excessive police force." *Id.* at 1498. In that case the deceased resisted arrest. The police officers began escorting him by force and according to witnesses, began beating him about the head. During the ensuing scuffle, one officer's gun was knocked to the ground. At

that point, the decedent lunged toward the second officer, who reacted by drawing his own revolver and shooting the decedent twice in the stomach, killing him. *Id,* at 1497 and n. 3. The decedent's sister sued the police officers pursuant to Section 1983, alleging violations of her brother's Fourteenth and Fourth Amendment rights.

As to plaintiff's substantive due process claim, the Court found that the District Court's use of the *Johnson* factors was correct and affirmed the trial court's conclusion that the two officers were liable for beating an individual when the beating occurred "with little or no provocation" and the blows "were not delivered in a good faith effort to control ..., but rather out of irritation at his initial resistance ..." *Id.* at 1501. The Court also relied on substantive due process grounds to affirm a judgment holding one of the policemen liable for the shooting death, finding that "any fear on the officer's part was the fear of retaliation against his own unjustified physical abuse." *Id.* Noting that "such action clearly implicated at least one of the *Johnson* factors in that the injury inflicted constituted the most serious harm possible," the court concluded that "a moment of legitimate fear should not preclude liability for a harm which largely resulted from his own improper use of his official power." *Id.; Cf. Young v. City of Killeen, Tex.,* 775 F.2d 1349 (5th Cir.1985) (Negligence of police officer in putting himself in a situation where he was forced to shoot plaintiff in self-defense did not rise to the level of a violation of plaintiff's Fourteenth and Fourth Amendment rights.)

Recently the Eleventh Circuit, in discussing unconstitutional excessive force, stated "[t]he cases [in the Eleventh Circuit] indicate that in order to set forth a due process claim such as that recognized in *Gilmere* as rising to the level of a constitutional tort, the claimant must plead and prove more than mere negligence." *Owens v. City of Atlanta,* 780 F.2d 1564, 1566 (11th Cir.1986). While it is true that in order to prevail in a Section 1983 excessive force action the Eleventh Circuit requires a plaintiff to prove more than mere negligence on

the part of a governmental official, it is also true that in most of the cases since *Gilmere* the Court has dealt with situations where the governmental official's act, which ultimately led to the harm of an individual, was intended. *Leslie,* 786 F.2d 1533 (Official who drove up in an unmarked car and was wearing civilian clothes, accosted plaintiff, grabbed him and struck him with a flashlight without even identifying himself as a police officer.); *Byrd,* 783 F.2d 1002 (Plaintiff, who was arrested for the offenses of disorderly conduct and resisting arrest after her conversation with a police officer became heated, brought suit alleging that she was seriously injured when the officer used excessive force in the arrest. The Court held that it was for a jury to decide whether the officer's actions were justified.); *Owens,* 780 F.2d 1564 (Intoxicated arrestee became disruptive so police officers secured him to a bench in the "stretch" hold position. Unable to maintain his balance, arrestee fell forward and as a result died of positional asphyxia.); *Fundiller,* 777 F.2d 1436 (Plaintiff's allegation that an undercover officer drew his weapon without identifying himself as a police officer and began firing shortly thereafter stated a substantive due process claim.)

In the two cases in which an individual lost his life due to the unintended acts of a governmental official, the Eleventh Circuit has held in favor of the official. In *Dunster,* 791 F.2d 1516, however, a case involving an unintended shooting by a police officer, the Court did not discuss the officer's lack of intent since the plaintiff's Fourteenth Amendment due process claim was premised solely on a theory of negligence and therefore the jury verdict in favor of plaintiff could not be sustained on such a theory. And in *Cannon v. Taylor,* 782 F.2d 947 (11th Cir.1986), the personal representative of a motorist who was killed when a city police vehicle struck her automobile brought a civil rights action against the driver of the police vehicle, alleging that he deprived Mrs. Cannon of her life without due process of law by virtue of his

reckless, excessive speeding without the use of lights and sirens. The Court affirmed a grant of summary judgment in the police officer's favor, holding that "a person injured in an automobile accident caused by the negligent, or even grossly negligent, operation of a motor vehicle by a policeman acting in the line of duty has no section 1983 cause of action for a violation of a federal right." *Id.* at 950.

In the case at bar, Counts One and Two of plaintiff's complaint, taken together, allege that due to his gross negligence, Fuller employed excessive force. There is no allegation nor is there any indication that Fuller *intended* to shoot Patterson. Since Fuller did not intend to shoot Patterson, the majority of the *Johnson* factors are skewed in plaintiff's favor. For instance, lack of intent suggests there was no need for the application of force, which in turn suggests the gun shot was not called for. Certainly the injury inflicted (death) constituted the most serious harm possible. And if Fuller did not mean to fire his gun, then he would be hard pressed to argue that he was making a good faith effort to maintain or restore discipline. On the other hand, it can hardly be argued that Fuller maliciously and sadistically applied force for the very purpose of causing harm.

 Because there is no indication that Fuller intended to shoot Patterson, obviously the *Johnson* factors alone are not very helpful in determining whether Fuller is entitled to summary judgment as a matter of law. Given the Supreme Court's recent holding in *Daniels*, however, this Court concludes that if there is ever a case where 'gross negligence' on the part of a governmental official will suffice to prevail on a substantive due process claim, it should be in a case where an individual loses his life. The Court finds that *Cannon v. Taylor* can be distinguished in that in that case there was not a sufficient relationship between the woman killed and the police vehicle operator; there the decedent just happened to be in the wrong place at the wrong time. Here, however, a sufficient relationship exists in that Fuller was in the process of

taking Patterson into custody. In fact, it could be argued that Fuller was in such control of the situation such as to, in effect, place Patterson at his mercy. The Court can envision a scenario wherein a police officer pulls over an individual who is driving on the interstate. Then for some reason, as the officer approaches the individual's stopped car, he draws his gun but then steps on a stone which causes him to fall with the result being that his gun fires, killing the individual in the car. If it can be shown that the officer was grossly negligent or reckless in having his gun drawn, then surely the individual's death "shocks the conscience" so as to rise to the level of a constitutional tort. *See* Wells & Eaton, *Substantive Due Process and the Scope of Constitutional Torts*, 18 Ga.L.Rev. 201, 242–45 (1984) (Suggesting that a constitutional tort should be available when the defendant governmental official's recklessness causes injury to a plaintiff under substantial control of the state.)

 Since plaintiff has offered the affidavit of an "expert" which states that Fuller was grossly negligent, the Court finds there are genuine issues of fact as to the culpability of Fuller. Therefore, defendant's motion for summary judgment as to plaintiff's allegation that Patterson's Fourteenth Amendment due process rights were violated is DENIED. To prevail on this claim at trial plaintiff must prove Philip Patterson's death was caused by the gross negligence of defendant Fuller. Specifically, plaintiff must show that Fuller was grossly negligent in having his gun cocked at the time he was standing over Patterson's head.

### THE ALLEGED FOURTH AMENDMENT VIOLATION

Plaintiff's Complaint alleges Philip Patterson's Fourth Amendment right to be secure in his person against unreasonable searches and seizures was violated by Fuller. Again plaintiff alleges Fuller used excessive force, was grossly negligent, and was negligent in attempting to arrest Pat-

terson. The Court will review the relevant case law as it pertains to this portion of plaintiff's complaint, keeping in mind the Supreme Court's recent statement that it did "not rule out the possibility that there are other constitutional provisions that would be violated by mere lack of care in order to hold, as we do, that such conduct does not implicate the Due Process Clause of the Fourteenth Amendment." *Daniels*, 474 U.S. at ——, 106 S.Ct. at 666, 88 L.Ed.2d at 670.

In *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), the Supreme Court held that the Fourth Amendment prohibits the use of deadly force to prevent the escape of a suspected felon unless it is necessary to prevent the escape *and* the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others; thus, a state statute which authorizes officers to use all necessary means to effect the arrest of a suspect who flees or forceably resists after being notified of the intent to arrest is unconstitutional insofar as it authorizes the use of deadly force to prevent the escape of an apparently unarmed suspect.[1]

Specifically, the Court found that "[w]henever an officer restrains the freedom of a person to walk away, he has seized that person." 471 U.S. at 7, 105 S.Ct. at 1699, 85 L.Ed.2d at 7 citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975). The majority recognized "it is not always clear just when minimal police interference becomes a seizure. . . ." *Id.* citing *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). All nine Justices agreed, however, "there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Id.*, 471 U.S. at 7 and 26, 105 S.Ct. at 1699 and 1709, 85 L.Ed. at 7 and 19 (O'Conner J., dissenting).

Reasonableness is to be determined by "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* quoting *United States v. Place*, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983). "Because one of the factors is the extent of the intrusion, it is plain that the reasonableness depends on not only when a seizure is made, but also how it is carried out." *Id.* at 7–8 citing *United States v. Ortiz*, 422 U.S. 891, 895, 95 S.Ct. 2585, 2588, 45 L.Ed.2d 623 (1975); *Terry v. Ohio*, 392 U.S. 1, 28–29, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968). *See also Brown v. District of Columbia*, 638 F.Supp. 1479, 1489 (D.D.C. 1986) quoting *Tarpley v. Greene*, 684 F.2d 1, 8–9 (D.C.Cir.1982) ("[T]he conduct of police officers in executing a search warrant is always subject to review as to its reasonableness, . . . and officers may be held liable under Section 1983 for executing a warrant in an unreasonable manner.")

Even though the Supreme Court's holding that a seizure is subject to the reasonableness requirement of the Fourth Amendment seems to be clear, there are differences in interpretations among the Circuit Courts of Appeals. For instance, the Fifth Circuit believes the balancing test of *Garner* is similar to its own test for determining whether a plaintiff in an excessive force action has made out a Fourteenth Amendment substantive due process claim. Thus, the Fifth Circuit requires that in order to prevail on a Fourth Amendment unreasonable seizure claim, a plaintiff must prove that the "state officer's action caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience. . . ." *Jamieson By and Through*

---

1. The Court of Appeals for the Sixth Circuit affirmed the District Court's holding with regard to the dismissal of the police officer, finding that he had acted in good faith reliance on the Tennessee statute and was therefore within the scope of his qualified immunity. *Garner v. Memphis Police Dep't, City of Memphis*, 600 F.2d 52 (6th Cir.1979).

*Jamieson v. Shaw,* 772 F.2d 1205, 1210 (5th Cir.1985), *reh'g denied,* 776 F.2d 1048; *Hendrix* 782 F.2d at 1275. *See also, New,* 792 F.2d at 726 ("If sufficiently egregious, a deliberate use of excessive force ... can implicate the substantive Fourth Amendment guarantee against unreasonable seizures...."); *Waggoner,* 792 F.2d 595, 601 (6th Cir.1986) (Krupansky, J., dissenting) ("A plaintiff must assert and prove that the arresting officers intended to use excessive force in effecting his arrest in order to prevail in a § 1983 action for deprivation of Fourth Amendment rights.") On the other hand, the Fourth Circuit holds that "[b]y necessary implication from *Garner's* analysis then, the use of any significant force, up to and including deadly force, not reasonably necessary to effect an arrest—as where the suspect neither resists nor flees or where the force used after a suspect's resistance has been overcome or his flight thwarted—would be constitutionally unreasonable." *Kidd v. O'Neal,* 774 F.2d 1252, 1256–57 (4th Cir.1985). *See also United States v. Penn,* 647 F.2d 876, 882–83 (9th Cir.), *cert. denied,* 449 U.S. 903, 101 S.Ct. 276, 66 L.Ed.2d 134 (1980) (Manner in which search is conducted may have been unreasonable even if the conduct did not rise to the level of a due process violation.)

The Eleventh Circuit in *Gilmere* also relied on the *Garner* balancing test to determine whether the decedent's Fourth Amendment rights had been violated. Finding that a seizure clearly occurred, the Court then concluded that in conducting the balancing test to determine the reasonableness of the seizure, the factors to be considered were " 'the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.' " *Gilmere,* 774 F.2d at 1502 quoting *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447. Given the facts of the case, the Court easily held that the decedent's Fourth Amendment interest in his bodily security and life were not outweighed by governmental interests in effective law enforcement since "the harms visited on the decedent while in the offi-

cers' custody were only minimally, if at all necessary to enable them to carry out their official duties." *Id.*

■ Given the *Gilmere* holding, it appears the Eleventh Circuit adopts an objective standard in determining whether a Fourth Amendment violation has occurred and therefore does not require a showing that the governmental official acted maliciously. Thus, defendant Fuller's contention that negligence will not suffice to prevail in a Section 1983 action is not entirely correct. Therefore, defendant's motion for summary judgment as it relates to the alleged Fourth Amendment violation is DENIED.

■ Having made the determination that an individual may seek redress under Section 1983 when his Fourth Amendment rights were negligently violated, the next issue to be decided is what a plaintiff is required to prove at trial to prevail on his claim. Particularly instructive is the Sixth Circuit's holding in *Leber v. Smith,* 773 F.2d 101 (6th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 1466, 89 L.Ed.2d 722. In that case a motorist brought a Fourth Amendment civil rights action against a deputy sheriff who had accidently shot him. The deputy's gun fired when he slipped and fell. The Sixth Circuit framed the issue as whether the deputy acted unreasonably in drawing his weapon while approaching the plaintiff's car. The Court affirmed a judgment in favor of the deputy, finding his acts to be reasonable in light of information he had that the plaintiff motorist was possibly irrational and suicidal. *Id.* at 105. This Court agrees that the *Leber* holding is the proper way to frame the issue. Therefore, in order to prevail on the Fourth Amendment claim, plaintiff must prove that Fuller acted negligently in having his gun cocked while standing over Patterson's head.

### THE DEFENSE OF GOOD FAITH OR QUALIFIED IMMUNITY

■ The defense of qualified or "good faith" immunity is available to law

enforcement officers to protect them from liability for damages if they acted in the good faith belief based upon reasonable grounds that the measures they took were necessary. *See, McQurter v. City of Atlanta, Ga.,* 572 F.Supp. 1401, 1414 (N.D. Ga.1983), *appeal dism.,* 724 F.2d 881 (11th Cir.1983). In the case at bar, defendant has cited the Georgia statutes which deal with the defenses of justification and self-defense. O.C.G.A. §§ 51–11–1, 16–3–20 and 16–3–21. Defendant has also cited numerous cases which hold that a law officer is not liable for his use of force if his actions were reasonably justified. Since defendant freely admits, however, that he had no intention to even hurt Patterson (Defendant's brief for summary judgment at p. 30), the conclusion must be made that defendant's admission precludes the Court from holding that his actions were justified as a matter of law. Nevertheless, the Court finds it necessary to address defendant's curious argument that he could have lawfully shot Patterson when Patterson did not obey his commands to come out of the bedroom but instead made a quick move which placed his hands out of view of the officers. While Fuller may have been justified in shooting Patterson at that point in time, the fact remains that Patterson came out of the bedroom and was accidently shot while he was lying on the living room floor. If defendant is taking the position that he was justified in shooting Patterson when Patterson was in the living room because he could have justifiably shot him when he was in the bedroom, then clearly this argument can only be labeled "verbal eyewash." Taken to an extreme, one could argue that he was justified in shooting an individual today because he could have legally shot the individual in self-defense yesterday. There being no facts in the record which will support a defense of qualified immunity or justification or self-defense as a matter of law, the Court cannot grant defendant's motion for summary judgment as to this issue.

ACCORDINGLY, defendant's motion for summary judgment is GRANTED (1) as to the portions of all three Counts which al-lege violations of the Fifth and Eighth Amendments, and (2) as to the portion of Count Three which alleges a negligent violation of the Fourteenth Amendment. Defendant's motion is DENIED (1) as to Counts One and Two, insofar as they allege Patterson's Fourteenth Amendment rights were violated due to defendant's gross negligence, (2) as to the portions of all three Counts which allege violations of the Fourth Amendment, and (3) as to the defense of qualified or "good faith" immunity.