Miguel Angel **ANDRADE,**
**et al., Plaintiffs,**

v.

**CITY OF BURLINGAME,**
**et al., Defendants.**

No. C–93–0453 MHP.

United States District Court,
N.D. California.

March 23, 1994.

John L. Burris, John L. Burris Law Offices, Oakland, CA, for plaintiffs Miguel Andrade, Rocio Andrade, Maribel Andrade and Jackie Marquez.

John L. Burris, Heidi Rand, John L. Burris Law Offices, Oakland, CA, for plaintiffs Maria Marquez and Francisca Andrade.

Joseph C. Howard, Branson Fitzgerald & Howard, Redwood City, CA, for defendants City of Burlingame, Alfred J. Palmer, Chief of Police and Richard Harman.

## OPINION

PATEL, District Judge.

Plaintiffs Miguel Andrade, Rocio Andrade, Maribel Andrade and Jackie Marquez brought this action against defendants City of Burlingame, Burlingame Police Chief Alfred Palmer, and Police Officer Richard Harman, alleging violations of their rights under 42 U.S.C. § 1983 as well as several state law causes of action.[1] Now before this court is defendants' motion for summary judgment on all counts.

---

1. All of the plaintiffs except Miguel Andrade are minors. At this court's direction, guardians ad litem have now been appointed for the minor plaintiffs. Maria Marquez has been appointed guardian ad litem for Jackie Marquez, her daughter. Francisca Andrade has been appointed guardian ad litem for Rocio and Maribel Andrade, her children.

*BACKGROUND* [2]

On February 6, 1992, Officer Harman of the Burlingame Police Department was patrolling the streets of Burlingame in his patrol car. He was accompanied by his police dog, with whom he had worked since 1988. Some time between 3:30 and 4:00 p.m., Officer Harman received a call from the police dispatcher informing him that a bus passenger had been assaulted with a baseball bat and that the suspects had fled the scene. The dispatcher provided Officer Harman with a description of the suspects and of the suspects' car and informed him that the suspects were believed to be armed with baseball bats and a pellet gun.

Officer Harman saw a car that fit the description of the suspects' vehicle and pulled the car over. The car was driven by Miguel Andrade. Rocio Andrade, Maribel Andrade and Jackie Marquez were passengers in the car.[3] Officer Harman called for back-up units after the car was stopped. Defendants claim that Officer Harman then ordered the driver from the car; plaintiffs claim that they understood that they were all to get out of the car. The parties agree that when Miguel Andrade got out, he failed to comply immediately with Officer Harman's command to lie down on the ground. Officer Harman then approached Miguel Andrade, and as he did so the other plaintiffs got out of the car.

The police dog was in the back seat of the patrol car when Officer Harman stopped the plaintiffs. A window divided the front compartment of the car from the rear compartment where the dog was; Officer Harman had left this window partially open in order to give the dog fresh air. *See* Declaration of Richard Harman in Support of Summary Judgment ¶ 7. Officer Harman also left the front door of the patrol car open when he got out of the car to approach Miguel Andrade. While Officer Harman was trying to subdue Miguel Andrade, the dog apparently climbed through the divider and out the open front door. The parties agree that Officer Harman did not order the dog to do so, and that

he did not know that the dog had left the vehicle. The dog proceeded to bite the heads of both Rocio Andrade and Jackie Marquez, again without being so ordered by Officer Harman. Officer Harman called the dog off as soon as he became aware that it had bitten the girls.

Shortly thereafter, it became clear that the Andrade party was not in fact the group that had assaulted the bus passenger. The plaintiffs were released and the girls received immediate medical attention. According to plaintiffs, the dog bites to Jackie Marquez's head caused her discomfort for a few weeks, and she continues to be afraid of both dogs and police officers. *See* Declaration of Heidi Rand, Ex. D (Marquez Deposition) at 8–10. Rocio Andrade apparently required stitches in her head and has on at least one occasion seen a psychiatrist regarding the incident. *See* Rand Decl., Ex. G (Rocio Andrade Deposition) at 35–37, 39. Plaintiffs subsequently filed this action seeking compensatory and punitive damages.

*LEGAL STANDARD*

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted:

> against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.... since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987). The moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by [its] own affidavits, or by the 'depositions, answers to inter-

---

2. The following statement of facts is taken from the parties' Joint Statement Of Undisputed Material Facts ("Joint Statement"), except as otherwise indicated.

3. There was apparently a fifth passenger in the car, Javier Chavarria. *See* Declaration of Heidi Rand, Ex. F (Chavarria Deposition) at 19–20. Mr. Chavarria is not a plaintiff in this action.

rogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (citations omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

The moving party does not surmount its initial burden through conclusory allegations as to the state of the material on file; however, it is not required to "support its motion with affidavits or other similar material *negating* the opponent's claim." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. (emphasis in original). The moving party discharges its burden by showing that the nonmoving party has not disclosed the existence of any "significant probative evidence tending to support the complaint." *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968).

The court's function on a motion for summary judgment is not to make credibility determinations. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510. The inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion. *T.W. Elec. Serv.,* 809 F.2d at 631.

*DISCUSSION*

Plaintiffs state in their opposition papers that they have dismissed several of their causes of action. Their remaining federal cause of action is for violations of their fourth and fourteenth amendment rights pursuant to 42 U.S.C. § 1983.[4] Plaintiffs have also alleged pendent state law claims for assault and battery, intentional and negligent infliction of emotional distress, and for negligent training, retention, supervision, investigation and discipline.

### I. Fourth Amendment Violations
#### A. Appropriate Plaintiffs

"Fourth Amendment rights are personal rights which ... may not be vicariously asserted." *Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961, 966–67, 22 L.Ed.2d 176, *reh'g denied sub nom. Ivanov v. United States,* 394 U.S. 939, 89 S.Ct. 1177, 22 L.Ed.2d 475 (1969). The plaintiffs do not argue that the stop itself was improper under the fourth amendment or that the seizure would have been unconstitutional if the police dog had not escaped from the car.[5] Miguel and Maribel Andrade make no claim that they were attacked by the dog or that the seizure *as to them* was unreasonable in any way. Indeed, it is unclear from plaintiffs' papers whether or not these two plaintiffs are in fact pursuing this claim. To the extent that plaintiffs Miguel and Maribel Andrade are attempting to assert such a cause of action, the court finds that they are not proper plaintiffs.

#### B. The Merits

The fourth amendment protects against "unreasonable searches and seizures...." U.S. Const. amend. IV. In order to prove a fourth amendment violation, plaintiffs Rocio Andrade and Jackie Marquez must first establish that there has been a seizure. *See Tennessee v. Garner,* 471 U.S. 1, 7, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985). A "seizure" occurs when a government actor restrains

---

4. Section 1983 provides in relevant part:

 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 42 U.S.C. § 1983.
 A claim under section 1983 requires proof of two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged depriva-

tion was committed by a person acting under the color of state law. *See West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254, 101 L.Ed.2d 40 (1988).

5. Officer Harman's conduct in stopping plaintiffs' car was proper, since the vehicle had been identified by an eyewitness as the one driven by the individuals who had beaten the bus passenger. *See* Joint Statement ¶¶ 1–5. *See generally Terry v. Ohio,* 392 U.S. 1, 20–21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). The fact that plaintiffs apparently turned out not to be the fleeing felons does not vitiate probable cause, and plaintiffs do not so argue.

the freedom of a citizen "by means of physical force or show of authority...." *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968); *see also Garner,* 471 U.S. at 7, 105 S.Ct. at 1699 (1985) ("[w]henever an officer restrains the freedom of a person to walk away, he has seized that person.").

In *Brower v. County of Inyo,* 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989), the Supreme Court attempted to delineate the contours of the "seizure" requirement. In that case, the plaintiffs' decedent, Brower, was killed when he crashed into a police roadblock set up by police to capture him. The plaintiffs argued that the roadblock effected an unreasonable seizure of Brower, since its design caused him to crash into it, rather than allowing him to stop voluntarily. The Ninth Circuit held that no seizure had occurred because Brower could have stopped voluntarily at any point before he collided with the roadblock. *See Brower v. County of Inyo,* 817 F.2d 540, 546–47 (9th Cir.1987). The Supreme Court reversed, holding that because the police had intended to stop Brower's movements by means of the roadblock, and had so stopped him, a seizure had occurred. *See Brower,* 489 U.S. at 595–97, 109 S.Ct. at 1380–81.

Distinguishing the case from situations in which a fleeing felon unexpectedly loses control of his car and crashes, the Court explained that the fourth amendment "requires an intentional acquisition of physical control." *Id.* at 596, 109 S.Ct. at 1381. The Court noted that the fourth amendment would not be implicated in the case of an innocent passerby—or even a fleeing felon—who is accidentally pinned against a wall by an unoccupied police car that slips its brake:

It is clear ... that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there

is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied.*

*Id.* at 596–97, 109 S.Ct. at 1381 (emphasis in original).

 In the instant case, it is undisputed that Officer Harman did not intend to use his police dog to subdue the plaintiffs. Indeed, the officer had already halted the plaintiffs' movement when the dog escaped from the car and bit Rocio Andrade and Jackie Marquez. The plaintiffs had already been seized. Plaintiffs attempt to argue that because the *dog* intended to bite the two girls, its actions were "intentional" and thus a seizure within the meaning of *Brower.* The dog is not a defendant in this suit nor could it be. Nor is the dog a government actor. At other times in their papers, plaintiffs make a more appropriate analogy: that the dog was essentially one "weapon" in Officer Harman's arsenal. Because Officer Harman did not intend to seize plaintiffs by this means, however, there can be no fourth amendment violation. The key question is whether *Officer Harman* intended to seize plaintiffs by means of the dog and the answer is indisputably "no." *Cf. Kerr v. City of West Palm Beach,* 875 F.2d 1546 (11th Cir.1989) (plaintiffs allowed to bring action against police department for fourth amendment violations where police intentionally used dogs to apprehend them).[6]

Plaintiffs cite to cases in which accidental shootings by police officers have been analyzed as fourth amendment seizures. For instance, in *Leber v. Smith,* 773 F.2d 101 (6th Cir.1985), *cert. denied,* 475 U.S. 1084, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986), the plaintiff argued that a deputy who accidentally shot him while making an investigatory stop had "unreasonably seized" him in violation of the fourth amendment. Although the Sixth

6. Although plaintiffs' analogy of the dog to a loaded weapon may be useful, they attempt to extend it too far by citing to cases in which defendants have been found liable for setting up trap guns or other deadly devices on their premises to deter burglars. *See People v. Ceballos,* 12 Cal.3d 470, 476–78, 116 Cal.Rptr. 233, 526 P.2d

241 (1974) (reviewing cases). The fact that a particular action may be a common law tort does not mean that it is necessarily actionable as a constitutional violation. Without establishing that Officer Harman intended to seize plaintiffs by using the dog, plaintiffs cannot establish a fourth amendment violation.

Circuit ultimately held that the seizure was reasonable, it implicitly held that the shooting, though accidental, was indeed a seizure. *See also Patterson v. Fuller,* 654 F.Supp. 418, 427 (N.D.Ga.1987) (following *Leber*). Notably, these cases pre-dated the Supreme Court's *Brower* decision, in which the Court more thoroughly refined the level of intent required for a fourth amendment seizure. Moreover, in both of these cases, the suspect was seized *by the intended instrumentality,* although not in the exact manner intended. In both *Leber* and *Patterson,* the defendant officers had drawn their guns and were attempting to exert authority over the suspects through this show of force. *See Leber,* 773 F.2d at 102; *Patterson,* 654 F.Supp. at 419–20. As the Supreme Court noted in *Brower:*

> In determining whether the means that terminates the freedom of movement is the very means that the government intended we cannot draw too fine a line, or we will be driven to saying that one is not seized who has been stopped by the accidental discharge of a gun with which he was meant only to be bludgeoned.... We think it is enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result.

*Id.* 489 U.S. at 598–99, 109 S.Ct. at 1382.

Whether or not the decisions in *Leber* and *Patterson* withstand the reasoning of *Brower,* it is clear that those cases are readily distinguishable from the instant one. It is not as if Officer Harman intended that the dog intimidate the plaintiffs into submission, or intended that the dog bite their pants' legs to prevent their escape. On the contrary, Officer Harman never meant to use this particular "instrumentality" in any way to effect the seizure. The dog simply escaped from the patrol car after Officer Harman had already seized the plaintiffs.

Accordingly, defendants' motion for summary judgment on plaintiffs' fourth amendment claim is granted.

7. Once again, it is unclear whether only Rocio Andrade and Jackie Marquez are pursuing this claim, or whether Miguel and Maribel Andrade are asserting it as well. At any rate, the analysis which follows applies to all the plaintiffs.

## II. *Fourteenth Amendment Violations*

■ Plaintiffs also claim that Officer Harman's actions violated their fourteenth amendment rights to personal security and to substantive due process.[7]

The Supreme Court has held that claims of excessive use of force during investigatory stops are properly analyzed under the fourth amendment, rather than under the fourteenth amendment. *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989). While recognizing that lower courts had often applied a substantive due process test to claims of excessive force, the Court in *Graham* held that it was more appropriate to analyze such claims, at least in the context of investigatory stops, under the fourth amendment's explicit prohibition on unreasonable searches and seizures. *See id.* at 393–94, 109 S.Ct. at 1870.

The Ninth Circuit has subsequently read the reach of *Graham* broadly, holding that "excessive force claims arising before or during an arrest are to be analyzed exclusively under the fourth amendment's reasonableness standard rather than the substantive due process standard...." *Reed v. Hoy,* 909 F.2d 324, 329 (9th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 2887, 115 L.Ed.2d 1053 (1991); *see also United States v. Reese,* 2 F.3d 870, 883 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 928, 127 L.Ed.2d 220 (1994). Although plaintiffs do not directly characterize their fourteenth amendment claim as an excessive force claim, it is clear that it is in fact such a claim. The facts and theories that plaintiffs rely on to support their fourteenth amendment claim are identical to those they use to support their fourth amendment claim: namely that Officer Harman was negligent in allowing the dog to escape from the patrol car during the investigatory stop. This cause of action is therefore appropriately pleaded as a fourth amendment violation and must be dismissed for the reasons set forth above.[8]

8. Cases cited by plaintiffs that pre-date *Graham* are thus of limited utility. For instance, plaintiffs cite to *Smith v. City of Fontana,* 818 F.2d 1411 (9th Cir.), *cert. denied,* 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987), in which the

Even if this court were to analyze plaintiffs' claim under the fourteenth amendment, it is clear that no constitutional violation occurred. Negligent conduct is not sufficient to support a constitutional violation pursuant to 42 U.S.C. § 1983. *See Daniels v. Williams*, 474 U.S. 327, 332, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986). In order to prove a claim under section 1983, a plaintiff must establish that the defendant acted with "deliberate indifference." *Wood v. Ostrander*, 879 F.2d 583, 587–88 (9th Cir.1989), *cert. denied*, 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990).[9] In *Ostrander*, the Ninth Circuit held that there was a triable issue of fact as to whether an arresting officer who impounded a woman's car and then left her alone at night in a high-crime area had shown deliberate indifference to her safety. *See id.* at 589.

The undisputed facts of this case clearly show that Officer Harman's actions did not rise to this level of culpability. Officer Harman believed he was confronting a group of suspects who were armed with baseball bats and a pellet gun and who had just beaten a bus passenger. *See* Joint Statement ¶ 5. Furthermore, the suspects, by their own admission were not fully complying with his orders. *See id.* ¶ 14. Officer Harman was forced into a situation in which he reasonably believed that he had to act quickly. In doing so he unintentionally left open the means by which the dog could escape from the car and attempt to subdue the plaintiffs. Once he realized that the dog had bitten the two girls, he immediately called the dog off and escorted it back to the car. After the scene had been secured, he called for medical assistance. *See* Harman Decl. ¶ 11.

There is some evidence that Officer Harman's dog had been trained to act on its own, without orders from the officer, in certain situations in which it perceived danger to the officer. *See, e.g.,* Rand Decl. Ex. A (Harman Deposition) at 44–46; *id.* Ex. I (O'Brien Deposition) at 35. This fact alone, however, cannot support a finding of "deliberate indifference." Officer Harman had worked with the dog for over three years and had never known it to attack without a command from an officer. Joint Statement ¶ 23. Indeed, the dog had never previously left Officer Harman's car without being instructed to do so. *Id.* ¶ 22. In view of all the circumstances, including the undisputed lack of intent by Officer Harman and the dog's history of non-aggression, plaintiffs cannot establish that the officer acted with deliberate indifference to their safety.

### III. *Liability of Chief Palmer and the City*

In *Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56

---

Ninth Circuit held that an estate could allege violations of a decedent's fourteenth amendment rights for excessive force by officers attempting to detain the decedent. *See id.* at 1417. In doing so, the Ninth Circuit relied upon the substantive due process test formulated by Judge Friendly in *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom. Employee-Officer John v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). *See Smith*, 818 F.2d at 1417. That reasoning was expressly disapproved by the Supreme Court in *Graham*. *See Graham*, 490 U.S. at 392–93, 109 S.Ct. at 1869–70.

The only post-*Graham* case cited by plaintiffs is *Wood v. Ostrander*, 879 F.2d 583 (9th Cir.1989). In that case, the Ninth Circuit held that a woman's allegations that a state trooper acted with deliberate indifference by impounding her car and then leaving her alone in a high crime area were sufficient to state a claim under section 1983 for violations of her fourteenth amendment rights. *See id.* at 588. The more generalized holding of *Ostrander*—that a governmental actor acting with deliberate indifference may violate a person's substantive due process rights—does not affect *Graham*'s specific holding—that such actions taken in the context of a seizure are to be analyzed under the fourth amendment.

9. The Supreme Court has expressly reserved the question of what level of fault is necessary to establish a constitutional violation under section 1983. *See City of Canton v. Harris*, 489 U.S. 378, 388 n. 8, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). The Court has held, however, that the "deliberate indifference" standard is the appropriate level of fault in cases in which a plaintiff sues a municipality for failure to train its employees. *See id.* at 388, 109 S.Ct. at 1204. The Ninth Circuit in *Ostrander* held that this same standard is applicable to underlying claims of constitutional violations. *See Wood*, 879 F.2d at 587–88; *see also Redman v. County of San Diego*, 942 F.2d 1435, 1441, 1443 (9th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992).

L.Ed.2d 611 (1978), the Supreme Court held that municipalities and local governments are "persons" for purposes of 42 U.S.C. § 1983 and may be held liable for violations of individuals' constitutional rights. *Id.* at 690, 98 S.Ct. at 2035. However, liability under section 1983 may not be imposed on a theory of *respondeat superior. Id.* at 693–95, 98 S.Ct. at 2037–38. Rather, a municipality may only be held liable when "execution of a government's policy or custom ... inflicts the injury...." *Id.* at 694, 98 S.Ct. at 2037–38. Plaintiffs argue that Chief of Police Palmer and the City of Burlingame are liable under this theory through their deliberate indifference to their officers' excessive use of force.

### A. The City's Liability For Its Employees' Constitutional Violations

A municipality may be held responsible for constitutional violations inflicted by its employees if such actions are taken pursuant to the municipality's customs or policies. However, in order to impose liability on a municipality under this theory there must be some underlying constitutional violation. *See City of Los Angeles v. Heller,* 475 U.S. 796, 798–99, 106 S.Ct. 1571, 1572–73, 89 L.Ed.2d 806 (1986). In *Heller,* the Supreme Court held that in an action for damages for unreasonable use of force, "neither [*Monell*] ... nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact ... the officer inflicted no constitutional harm." *Id.* at 799, 106 S.Ct. at 1573. Because this court has ruled that Officer Harman did not violate plaintiffs' fourth or fourteenth amendment rights, plaintiffs' attempt to impose liability on the City on the basis of his actions must also fail.

### B. The City's Liability For Its Own Constitutional Violations

In certain circumstances, a municipality may also be held liable under section 1983 even if no individual employee can be held liable. For instance, in *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Supreme Court held that liability could be imposed upon a city for failing to train its police department as to when a detainee required medical care, al-

though in that case a jury had already found that the employees themselves did not violate the plaintiff's constitutional rights. *See id.* at 382, 388, 109 S.Ct. at 1201, 1204. The Court held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388, 109 S.Ct. at 1204; *see also Sanders v. Kennedy,* 794 F.2d 478, 483 (9th Cir.1986) (police department's hiring and retention of officers "predisposed to violate [plaintiffs'] constitutional rights" can show deliberate indifference sufficient to impose liability).

As an initial matter, it does not appear that plaintiffs set forth this theory in their complaint, although they now argue some version of it in their papers. In their complaint, plaintiffs allege that the City and Officer Palmer are liable under section 1983 for being deliberately indifferent to an alleged practice of police officers to use excessive force against Hispanic–American citizens. Plaintiffs have since dismissed any equal protection claim.

At any rate, plaintiffs would be unable to hold the City or Chief Palmer directly liable for violating either plaintiffs' fourth or fourteenth amendment rights. Given the fourth amendment's requirement of "intent" for a seizure, it is questionable whether a municipality could ever be held directly liable for a "seizure." Rather, plaintiffs would first have to prove that a particular officer made an unconstitutional seizure and then prove that the city was legally responsible for that constitutional violation. *See, e.g., Heller,* 475 U.S. at 798–99, 106 S.Ct. at 1572–73. As discussed above, plaintiffs have made no showing that Officer Harman seized them unlawfully.

█ It is possible to hold a municipality liable under section 1983 for fourteenth amendment violations even where no individual employee is liable; however, such a claim is not available to plaintiffs on the undisputed evidence before the court in this case. The evidence submitted shows that the City had a detailed policy regarding the canine unit. *See* Rand Decl. Ex. K. Plaintiffs have point-

ed to no evidence to indicate that the City did not follow this policy, nor any evidence to show that the City had any history of problems with the unit.[10] The only evidence plaintiffs present regarding the City's liability on this issue is that the dogs in the canine unit are trained to act on their own initiative in some instances (*i.e.*, if the officer is in danger). This fact alone cannot establish a policy or custom that violates plaintiffs' fourteenth amendment rights.[11]

There may be instances in which a city's canine unit puts citizens in such peril that the city's actions can be found to be violative of the fourteenth amendment, but the facts presented by plaintiffs do not support such a claim. Therefore, defendants' motion for summary judgment against Chief Palmer and the City of Burlingame is granted.

## IV. *State Law Claims*

Because this court has determined that plaintiffs' federal claims are not viable, there is no federal claim left upon which to support supplemental jurisdiction over plaintiffs' state law claims. Accordingly, plaintiffs' state law claims are dismissed without prejudice for lack of jurisdiction.

## CONCLUSION

The incident that occurred was undoubtedly unfortunate. However, not every unfortunate occurrence amounts to a legal wrong and not every legal wrong is actionable in federal court. For the foregoing reasons, defendants' motion for summary judgment as to plaintiffs' federal claims is GRANTED without prejudice to plaintiffs pursuing their state claims in state court. Plaintiffs will be given thirty (30) days from the date of this order in which to file this action in state court. The court deems that any applicable statutes of limitations were tolled during the pendency of this action and for the next thirty days.

IT IS SO ORDERED.

---

**10.** Plaintiffs contend that there is evidence to show that the dogs could act if the officer was in threat of being assaulted, *see* Rand Decl. Ex. I (O'Brien Deposition) at 35, and that this evidence is somehow in conflict with the written policy that allows dogs to take offensive action "to guard against imminent loss of life or serious bodily injury." *See* Rand Decl., Ex. K at 6. The court fails to see the inconsistency between the policy and the evidence submitted.

Plaintiffs also claim that the fact that no formal reprimand of the dog or the officer was made indicates a policy or custom of deliberate indifference. In support of this argument, plaintiffs cite *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir.1986). In *McRorie,* however, the Ninth Circuit held only that "[p]olicy or custom may be inferred if, after the [incident], . . . officials took no steps to reprimand or discharge the guards, *or if they otherwise failed to admit the guards' conduct was in error." Id.* (emphasis added). In the instant action, it is undisputed that the City and appropriate officials agree that the dog acted inappropriately. *See* Joint Statement ¶ 30.

**11.** In addition, as discussed above, the Supreme Court has made clear that claims for use of excessive force during investigatory stops must be analyzed under the fourth amendment, rather than the fourteenth amendment. *See Graham,* 490 U.S. at 395, 109 S.Ct. at 1871. The Court's analysis would also appear to apply to cases such as the instant one where plaintiffs attempt to hold a *City* liable for conduct of its police force during an investigatory stop.