

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE OCT 1 3 2016

*Madsen, C.J.*
CHIEF JUSTICE

This opinion was filed for record

at 8:00 a.m. on Oct. 13, 2016

E. _____, Deputy Clerk

SUSAN L. CARLSON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| BRYENT AND PATRICIA FINCH, a marital community, | ) ) ) | No. 91761-2 |
| Petitioners, | ) ) ) | |
| v. | ) ) | En Banc |
| THURSTON COUNTY; THURSTON COUNTY SHERIFF'S OFFICE; ROD DITRICH AND JANE DOE DITRICH, individually and as husband and wife and the marital community comprised thereof, | ) ) ) ) ) ) ) | |
| | | Filed   OCT 1 3 2016 |
| Respondents. | ) ) ) | |

GONZÁLEZ, J.—A police dog bit a police officer during a nighttime search for a burglary suspect in an abandoned building. Dog owners are usually strictly liable for dog bite damages. RCW 16.08.040. In other words, if strict liability applies, the injured person does not have to prove that the owner was negligent or aware that the dog posed a threat. If strict liability applies in this case, it appears the only issue for the jury would be the amount of damages. However, there is a statutory exception to strict

liability for dog bites caused by the "lawful application of a police dog." RCW 16.08.040(2).

This case asks us to decide whether the police dog was lawfully applied under the statute, thereby exempting the county from strict liability. We hold that the specially trained police dog was lawfully applied because he was performing a job duty under the control of a dog handler when the injury occurred. Therefore, we find the county is not subject to strict liability. We affirm.

BACKGROUND

On November 14, 2010, Bryent Finch, a Tumwater police officer, responded to a call to investigate a possible burglary in progress at the old Olympia Brewery. After surveying the scene, Finch requested a "K-9" unit to help search the brewery. Deputy Rod Ditrich of the Thurston County Sheriff's Office responded with his police dog, Rex.[1]

The officers decided that Finch would assist Ditrich and Rex search the brewery. The building was dark inside except for the officers' flashlights. Finch, Ditrich, and Rex entered the building, and Ditrich loudly announced their presence. When no one responded, Ditrich commanded

---

[1] The Thurston County Sheriff's Office and the Tumwater Police Department are parties to an interlocal cooperation agreement to assist each other in law enforcement operations when requested.

Rex to search the building. Rex, unleashed, ran ahead of the officers, tracking the scent of the suspect in and out of rooms.

The officers followed Rex into a dark room where the suspect was hiding. Ditrich called Rex back to him, saying "here, here, here." Clerk's Papers (CP) at 287. At this point, both parties largely agree that Finch saw the suspect, that Finch shouted at him to show his hands, and that Rex bit Finch as Rex returned to Ditrich. Ditrich had to physically pull Rex off of Finch before taking the suspect into custody. Finch drove himself to the hospital, where he underwent surgery for his injuries.

Finch sued Thurston County and others on June 6, 2012 for his injuries, alleging negligence, outrage, and strict liability under RCW 16.08.040. The next day, Substitute House Bill 2191, 62d Leg., Reg. Sess. (Wash. 2012) came into effect, exempting "the lawful application of a police dog" from strict liability under RCW 16.08.040. LAWS OF 2012, ch. 94, § 1(2). On cross motions for partial summary judgment, the trial court dismissed Finch's statutory strict liability claim. The trial court concluded that the bite occurred during a "lawful application of a police dog," exempting the county from strict liability under RCW 16.08.040(2) because the police dog was used "to aid an officer in searching an area." Verbatim

3

Report of Proceedings at 14-15. Finch voluntarily dismissed his remaining claims for negligence and outrage.

Finch appealed the dismissal of his strict liability claim, arguing that Rex's bite was not a lawful application of a police dog. The Court of Appeals affirmed and held that the legislature had abolished strict liability claims for injuries resulting from lawfully used police dogs. *Finch v. Thurston County*, No. 45792-0-II, slip op. at 1-2, http://www.courts.wa.gov/opinions/pdf/D2%2045792-0-II%20%20Unpublished%20Opinion.pdf. We granted review. 184 Wn.2d 1001, 357 P.3d 666 (2015).

## ANALYSIS

Finch argues that Thurston County is strictly liable for his dog bite injury because Rex's bite was not a "lawful application of a police dog" within the meaning of RCW 16.08.040(2). We disagree. Because Rex was being used by a law enforcement agency, was specially trained for law enforcement work, and was under the control of a dog handler when the bite occurred, Rex was lawfully applied for purposes of the strict liability exemption.

In 1941, the legislature enacted a statute, now codified as RCW

16.08.040, making a dog owner strictly liable for injuries caused by her

dog.[2] LAWS OF 1941, ch. 77 § 1. The statute states:

> The owner of any dog which shall bite any person while such person is in or on a public place or lawfully in or on a private place including the property of the owner of such dog, shall be liable for such damages as may be suffered by the person bitten, regardless of the former viciousness of such dog or the owner's knowledge of such viciousness.

RCW 16.08.040(1). In 2012, the legislature amended the statute, carving

out an exemption from strict liability for police dogs.[3] LAWS OF 2012, ch.

94, § 1 (adding subsection (2)). Under the exemption, strict liability "does

not apply to the lawful application of a police dog, as defined in RCW

4.24.410." RCW 16.08.040(2). RCW 4.24.410 defines a police dog as "a

dog used by a law enforcement agency specially trained for law enforcement

work and under the control of a dog handler." RCW 4.24.410(1)(a).

Unfortunately, neither statute defines the "lawful application of a

police dog." Both parties argue the statute's meaning is plain on its face. If

---

[2] Our State waived its sovereign immunity in 1961 and extended that waiver to local governments in 1967. LAWS OF 1961, ch. 136, § 1; LAWS OF 1967, ch. 164, § 1.

[3] This amendment became effective on June 7, 2012, one day after Finch filed his complaint against Thurston County. Finch initially argued to both the trial court and the Court of Appeals that the police dog exception applied prospectively and therefore did not apply to his case. *See* CP at 321-27; *Finch*, slip op. at 4. The Court of Appeals rejected this argument, and Finch did not seek review of that determination in his petition of review to this court. For the purposes of this opinion, we assume without deciding that the amendment applies to this case.

5

a "statute's meaning is plain on its face, then the court must give effect to its plain meaning as an expression of what the Legislature intended." *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001) (citing *State v. Chapman*, 140 Wn.2d 436, 450, 998 P.2d 282 (2000)). The court determines plain meaning "from the ordinary meaning of the language used in the context of the entire statute in which the particular provision is found, related statutory provisions, and the statutory scheme as a whole." *Bostain v. Food Express, Inc.*, 159 Wn.2d 700, 708, 159 P.3d 846 (2007) (citing *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005)).

To determine the plain meaning of an undefined term, we may also look to the dictionary. *Estate of Haselwood v. Bremerton Ice Arena, Inc.*, 166 Wn.2d 489, 498, 210 P.3d 308 (2009) (citing *Garrison v. Wash. State Nursing Bd.*, 87 Wn.2d 195, 196, 550 P.2d 7 (1976)). "Application" has a number of definitions, including "employment as a means: specific use." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 105 (2002). "Lawful" is defined as "allowed or permitted by law." WEBSTER'S, *supra*, at 1279. We find these definitions illuminating. Together, they define "lawful application" of a police dog as the (1) employment or specific use of a police dog (2) as allowed by law.

6

State regulations have defined the specific uses that police dogs may be trained to carry out. Police dogs may be trained to assist in general patrol and investigations, tracking and trailing persons, building and vehicle searches, and drug and bomb detection. *See* WAC 139-05-915(4). Police dogs may also be trained "solely for self-protection and assistance in hostile or potentially hostile situations." WAC 139-05-915(4)(d). Thus, when a police dog is on duty and used for a purpose consistent with its training and certification, the police dog has been lawfully applied within the meaning of RCW 16.08.040(2) and strict liability will not apply.

Finch argues that there is an "application" of a police dog under RCW 15.08.040(2) only when the handler orders the dog to bite someone. Pet. for Review at 15. This reading, however, does not take into account the myriad of situations police dogs are trained for, including training to bite in certain circumstances without a direct order. For example, police dogs are trained in "master protection"—to protect their handlers in the event that the handler is attacked or injured—and will bite the assailant without a command to do so. *See* WAC 139-05-915(4)(a)(xii), (d); *see also* CP at 148. But under Finch's interpretation, municipalities would be strictly liable for any dog bite made without a command. Neither the plain language nor the legislative

history of the exemption supports this narrow interpretation. We decline to adopt it.[4]

In this case, the trained police dog, Rex, was on duty and was dispatched to the scene to be used for a specific purpose: to perform a building search for a suspect. At this point, Rex had been lawfully applied for this particular situation. Although Rex bit someone who was not a "suspect" while he was lawfully applied, the county is not strictly liable for those injuries. As the Court of Appeals correctly stated below, "[t]he fact that Finch was mistakenly bitten by Rex does not convert a lawful use of Rex to an unlawful use." *Finch*, slip op. at 6. State action does not become unlawful merely because it was predicated on a mistake. *See generally* ROGER J. TRAYNOR, THE RIDDLE OF HARMLESS ERROR 3, 9 (1970). Accordingly, we hold that the use of Rex was a lawful application of a police dog and that under RCW 16.08.040(2), Thurston County is exempt from strict liability for the injuries to Finch.[5] Our decision is bolstered by a

---

[4] The dissent seems to believe a properly trained canine officer faced with an armed attacker threatening its handler will not intervene until the attacker uses the weapon. But "[d]etached reflection cannot be demanded in the presence of an uplifted knife," regardless of species. *Brown v. United States*, 256 U.S. 335, 343, 41 S. Ct. 501, 65 L. Ed. 961 (1921). Thankfully, the canine officer, like any other, might well act to protect the officer before she is stabbed or shot.

[5] The approach advocated by the dissent would require us to ask a jury whether a defendant is subject to strict liability by deciding some predicate factual question. But whether strict liability applies to a category of activity is a question of law for the

recent decision of a federal court concluding the exception applied when the police dog and police handler "me[]t the requirements to be classified as a 'police dog' and 'dog handler,' respectively." *Germain v. City of Seattle,* 2016 WL 3017704, at *5 (W.D. Wash. May 25, 2016).

Finch suggests that exempting municipalities from strict liability in instances such as this one would eliminate a remedy for "innocent" dog bite victims. Pet. for Review at 13-14, 20. We find this argument unpersuasive. While RCW 16.08.040(2) carves out an exemption from a strict liability statute, the exemption does not mean the police department or municipality is *immune* from suit in every instance a police dog bites someone.[6] The unavailability of a strict liability claim does not preclude plaintiffs from pursuing other causes of actions against municipalities, such as negligence, civil rights violations, or assault, along with or in lieu of a strict liability

---

legislature or the court to decide, not a jury. 16 DAVID DEWOLF & KELLER ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 3.3, at 130 (4th ed. 2013) (citing *Langan v. Valicopters, Inc.,* 88 Wn.2d 884, 567 P.3d 218 (1977)). We can find no case that left it to a jury to decide whether strict liability should apply categorically. The legislature is presumed to know the preexisting law, and if it had intended to depart from this general rule, it would have said so. *See Wynn v. Earin,* 163 Wn.2d 361, 371, 181 P.3d 806 (2008) (citing *Price v. Kitsap Transit,* 125 Wn.2d 456, 463, 886 P.2d 556 (1994)).

[6] The legislature has granted immunity to police dog handlers, but did not extend that immunity to local police departments or municipalities who own the police dogs. "Any dog handler who uses a police dog in the line of duty in good faith is immune from civil action for damages arising out of such use of the police dog or accelerant detection dog." RCW 4.24.410(2). This immunity for dog handlers, however, would not apply to situations where police officer used a police dog in bad faith.

claim.[7] *Arnold v. Laird*, 94 Wn.2d 867, 870-71, 621 P.2d 138 (1980) (citing *Ulmer v. Ford Motor Co.*, 75 Wn.2d 522, 531, 452 P.2d 729 (1969)). "[A] negligence cause of action arises where there is ineffective control of an animal in a situation where it would reasonably be expected that injury could occur, and injury does proximately result from the negligence." *Id.* at 871. Additionally, there could be situations where municipalities were negligent in adequately training or certifying a police dog for use in the field. Thus, a remedy may be available for plaintiffs for their injuries even if strict liability is not available.[8]

## CONCLUSION

We hold that Thurston County is not subject to strict liability, as the deployment of Rex was a "lawful application of a police dog" under RCW 16.08.040(2). The police dog, Rex, was on duty performing his job duties under the control of a dog handler and was therefore lawfully applied when the injury to Finch occurred. Accordingly, we affirm.

---

[7] Because Finch voluntarily dismissed his claim of negligence against the county, his recovery may be limited to his workers' compensation coverage.

[8] We are not faced today with a case where the "application" of a police dog violated the Fourth Amendment to the United States Constitution. We leave for another day whether such an encounter could possibly be a "lawful application" of a police dog under RCW 16.08.040(2).

Gonzáles, J.

WE CONCUR:

_____          _____

_____          _____

Fairhurst, J.                    Gordon McCloud, J.

Stephens, J.                     Yu, J.

*Finch v. Thurston County, et al.*

No. 91761-2

MADSEN, C.J. (dissenting)—The majority holds that because the police dog here was on duty, the strict liability imposed for dog bites under RCW 16.08.040(1) does not apply. This holding ignores the plain language of the exemption found in RCW 16.08.040(2) (discussed *infra*). The majority also sees no need to involve a fact finder in making determinations under the strict liability dog bite statute and its statutory exception, observing that the "category of activity" to which strict liability is to be applied "is a question of law for the legislature or the court to decide." Majority at 8 n.5. Here, the legislature has so determined in RCW 16.08.040 by imposing strict liability on dog owners when their dogs bite others, and by further providing a narrow exception to such liability. The question here is whether the exception applies, and that determination necessarily turns on the facts of the case. As explained herein, some facts essential to that determination are in dispute. Resolving such disputes is the proper role of a fact finder, *see State v. Holbrook*, 66 Wn.2d 278, 279, 401 P.2d 971 (1965) (the function and province of the jury is to weigh the evidence, determine credibility, and decide disputed questions of fact), and as discussed herein, the presence of such disputed facts renders the trial court's grant of summary judgment improper. Accordingly, I dissent.

No. 91761-2
(Madsen, C.J., dissenting)

Discussion

This case was dismissed on summary judgment. But, when the facts as alleged by Tumwater Police Officer Bryent Finch are taken as true, as they must be, it is clear that the police dog that attacked and bit Officer Finch was out of his handler's control, that the dog failed to obey his handler's recall command, and that the dog was not being lawfully applied by law enforcement when it attacked Officer Finch. As discussed below, the dog bite statute, RCW 16.08.040, imposes strict liability on the owner of any dog, including a police department, when a dog bites any person. The sole exception, which must be construed narrowly, as all exceptions are unless otherwise provided, applies to a police dog only when the animal is "lawfully applied." The dispute here is whether the dog that attacked and bit Officer Finch was being "lawfully applied" when it bit Officer Finch.

Facts

On November 14, 2010, at 7 p.m., Officer Finch responded to a call regarding a possible burglary in progress at the shuttered Olympia Brewery in Tumwater, Washington.[1] When Officer Finch arrived on the scene, he contacted a security guard at the brewery. The security guard told Officer Finch that a window had been broken in the large brewery building and it was unclear if anyone was still inside. Officer Finch then requested that a police dog (a police "K-9" unit) be brought to the scene. Clerk's Papers (CP) at 281.

---

[1] Another Tumwater police officer, identified only as "Officer Hollinger," also responded to the scene. CP at 118, 281.

2

Deputy Rod Ditrich of the Thurston County Sheriff's Office responded to the call with his police dog, Rex.[2] The officers decided that Officer Finch, Deputy Ditrich, and Rex would search the building's interior while the security guard and Officer Hollinger remained outside. When Officer Finch and Deputy Ditrich entered the building, Deputy Ditrich loudly announced three times, "'This is the Sherriff's Office, this building is going to be searched by a Police K9, announce your presence, give up or you will be bit!'" CP at 287. The officers received no response and began their search of the building.

It was dark outside when the search began, and there was no electricity or lighting in the building. The building was dark inside except for the officers' flashlights. The officers had to maneuver around hazards including large holes in the floor where beer vats had been removed. Officer Finch used his flashlight intermittently to avoid "backlighting" Deputy Ditrich and giving away his position to a potential suspect. CP at 120. During the search, the police dog was not on a leash and was running in and out of rooms and between the two officers.

When Rex detected the suspect's scent, he ran to a room at the front entryway of the building. Rex entered the room first, followed by Deputy Ditrich, and then Officer Finch. Upon entering the room, Deputy Ditrich moved to the right and Officer Finch

---

[2] The Thurston County Sheriff's Office provides assistance in law enforcement operations reciprocally to the Tumwater Police Department and other city police departments in the Olympia area pursuant to an interlocal cooperation agreement. *See* CP at 162-69.

3

moved to his left, away from Deputy Ditrich. Due to the darkness, Officer Finch could not see the police dog.

Shortly after entering the room, Officer Finch heard Deputy Ditrich say "'here, here, here.'" CP at 122. Officer Finch interpreted these words as indicating that Deputy Ditrich had located the suspect and was signaling the suspect's location to Officer Finch. But Deputy Ditrich was actually commanding Rex to return to him. Upon hearing Deputy Ditrich's command, Officer Finch noticed the suspect trying to hide in the far northeast corner of the room. Officer Finch loudly commanded the suspect, "'Hands, show me your hands!'" CP at 282. This occurred as Rex was complying with Deputy Ditrich's return command, but the dog suddenly attacked Officer Finch, biting him in the groin and piercing his right testicle.

Officer Finch fell to the ground screaming as the dog continued to bite him. He repeatedly yelled for Deputy Ditrich to remove the dog. Deputy Ditrich ordered the suspect not to move, and he then had to physically pull the dog off of Officer Finch. Officer Finch described the difficulty that Deputy Ditrich was having regaining control of the dog, stating, "It seemed like it took Deputy Ditrich at least one minute to get 'Rex' to release his bite on me." CP at 282. After Deputy Ditrich regained control of Rex and led the dog away from Officer Finch, he then took the suspect into custody.

Officer Finch was bleeding from his scrotum and knew his injuries were "bad," but did not know the full extent of the damage to his testicles. CP at 283. He determined that he could get to the hospital emergency room faster by driving himself in his patrol

4

car rather than by waiting for an ambulance. When he arrived at the Providence St. Peter Hospital emergency room in Olympia, a urologist examined his injuries and determined that he should be treated at Harborview Medical Center in Seattle. An ambulance transported Officer Finch to Harborview, and the urologist there determined that immediate scrotal surgery was necessary. CP at 283. The surgery revealed that the dog bite had ruptured Officer Finch's right testicle, requiring removal of one quarter of that damaged organ. Following the surgery, the urologist informed Officer Finch that while the remaining partial testicle could still produce testosterone, it would no longer produce sperm, and that during convalescence if the blood supply to the partial testicle proved insufficient or the organ was otherwise not viable, it would have to be removed.

Officer Finch filed a complaint on June 6, 2012 for personal injuries, asserting claims against Thurston County (County) and others[3] for negligence, outrage, and strict liability under RCW 16.08.040. On cross motions for partial summary judgment, the trial court dismissed Officer Finch's statutory strict liability claim. The trial court ruled that RCW 16.08.040(2), which provides that strict liability under the statute does not arise where an injury results from the "lawful application of a police dog," precluded the claim. Verbatim Report of Proceedings at 14-15. Officer Finch then voluntarily dismissed his remaining claims for negligence and outrage and appealed the dismissal of his strict liability claim. Division Two of the Court of Appeals affirmed in an unpublished opinion. *Finch v. Thurston County*, noted at 186 Wn. App. 1035, *review granted*, 184

---

[3] Original defendants included Thurston County, Thurston County Sheriff's Office, Rod Ditrich, and Jane Doe Ditrich. CP at 336-37.

5

Wn.2d 1001, 357 P.3d 666 (2015). Officer Finch sought and was granted review in this court on the single issue of "whether the dog bite injury to Officer Finch resulted from the 'lawful application of a police dog' within the meaning of RCW 16.08.040(2)." Pet. for Review at 11.

## Standard of Review

When reviewing a motion for summary judgment, this court engages in the same inquiry as the trial court: the motion can be granted only if the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008); CR 56(c). This court must consider all the facts and reasonable inferences in the light most favorable to the nonmoving party; the motion should be granted only if reasonable persons could reach but one conclusion. *Ranger Ins.*, 164 Wn.2d at 552.

Further, when construing a statute, as the court must do here, the court's goal is to carry out the intent of the legislature. *Seven Gables Corp. v. MGM/UA Ent'mt Co.*, 106 Wn.2d 1, 6, 721 P.2d 1 (1986). The court's interpretation must make the statute purposeful and effective. *Id.* Undefined words in a statute must be given their plain and ordinary meaning unless a contrary intent appears. *Dennis v. Dep't of Labor & Indus.*, 109 Wn.2d 467, 479-80, 745 P.2d 1295 (1987). Definitions that are provided by the

legislature "become integral to the statutory scheme." *Seven Gables Corp.*, 106 Wn.2d at 7.[4]

## RCW 16.08.040

The primary issue before this court is whether the dog bite to Officer Finch falls within the "lawful application of a police dog" exemption that the legislature added to the strict liability dog bite statute in 2012. The issue is resolved by applying the plain language of the strict liability dog bite statute, RCW 16.08.040. That statute provides in full:

> (1) The owner of any dog which shall bite any person while such person is in or on a public place or lawfully in or on a private place including the property of the owner of such dog, shall be liable for such damages as may be suffered by the person bitten, regardless of the former viciousness of such dog or the owner's knowledge of such viciousness.
>     (2) This section does not apply to the lawful application of a police dog, as defined in RCW 4.24.410.

*See* LAWS OF 2012, ch. 94, § 1 (effective June 7, 2012) (adding subsection (2)). RCW 4.24.410, which also provides immunity to a dog handler who uses a police dog in the

---

[4] We recently explained the appropriate analysis in *BAC Home Loans Servicing, LP v. Fulbright* as follows:

> "[W]e strive to ascertain the intention of the legislature by first examining a statute's plain meaning." *G-P Gypsum Corp. v. Dep't of Revenue*, 169 Wn.2d 304, 309, 237 P.3d 256 (2010) (citing *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)). To glean the meaning of words in a statute, we do not look at those words alone, but """all [of] the terms and provisions of the act in relation to the subject of the legislation, the nature of the act, [and] the general *object to be accomplished* and *consequences that would result from construing the particular statute in one way or another*.""" *Burns v. City of Seattle*, 161 Wn.2d 129, 146, 164 P.3d 475 (2007) (quoting *State v. Krall*, 125 Wn.2d 146, 148, 881 P.2d 1040 (1994) (quoting *State v. Huntzinger*, 92 Wn.2d 128, 133, 594 P.2d 917 (1979))).

180 Wn.2d 754, 766, 328 P.3d 895 (2014) (emphasis added) (alterations in original).

line of duty in good faith, provides in relevant part here, "'Police dog' means a dog used by a law enforcement agency specially trained for law enforcement work and *under the control of a dog handler*." RCW 4.24.410(1)(a) (emphasis added). Further, Washington law requires a dog handler to keep his or her police dog under control at all times. *See* WAC 139-05-915(5) ("It is the handler's responsibility to keep their canines under control at all times.")

Relevant here, by its plain terms, subsection one imposes liability on the "owner" of "any dog" that bites "any person" who is lawfully in a private place. RCW 16.08.040(1).[5] Reading the subsection (2) exemption together with the definition section, the exemption from liability is triggered when (1) a police dog is *applied* by its handler, (2) such application is *lawful*, and (3) the handler is *in control* of the dog. *See* RCW 16.08.040(2); RCW 4.24.410(1)(a). Taken in the light most favorable to Officer Finch, when the bite occurred, the dog was not being "applied" by its handler and the handler was not in control of the dog, thus, the exemption does not apply.

First, there was no command to the dog at all regarding Officer Finch, thus, there was no *application* of the dog by the handler. The County asserts, and the majority agrees, that the "lawful application" was "the application of [police dog] Rex for the

---

[5] Because this strict liability statute by its terms applies broadly to all owners of any dog that bites any person, we should construe the exemption narrowly. *Cf. Cerrillo v. Esparza*, 158 Wn.2d 194, 202, 142 P.3d 155 (2006) (noting "'[e]xemptions from remedial legislation'" are "'narrowly construed'" (quoting *Drinkwitz v. Alliant Techsystems, Inc.*, 140 Wn.2d 291, 301, 996 P.2d 582 (2000))); *W. Ports Transp., Inc. v. Emp't Sec. Dep't*, 110 Wn. App. 440, 460, 41 P.3d 510 (2002) (where Washington's definition of covered employment is exceedingly broad, its "exemptions must be read narrowly").

8

building search." Answer to Pet. for Review (Answer) at 10; *see also* majority at 4, 8. But that is not the application at issue concerning the bite to Officer Finch. The County admits that "[i]t is undisputed that Officer Finch was bitten *after* K-9 Rex was recalled by Deputy Ditrich." Answer at 17 (emphasis added). The application of the dog—to search the building for a burglary suspect—was over. The dog bit Officer Finch after being recalled and while acting on its own without a command from the handler. Thus, as to the dog bite at issue, there was no "application" of the dog within the meaning of RCW 16.08.040(2).

Second, the dog was not in the "control of [the] handler." RCW 4.24.410(1)(a); *see* Suppl. Br. of Resp't at 12 ("There is no dispute that Deputy Ditrich, having recalled Rex, did not intend for Rex to seize or bite anyone at the time of [Officer] Finch's injury."). After being recalled from searching the building and locating the burglary suspect, the dog attacked Officer Finch, without a directive from its handler. As noted, it is undisputed that no one intended for the dog to attack Officer Finch. Thus, the dog acted on its own in attacking Officer Finch. Moreover, it took Deputy Ditrich "at least one minute" to get Rex to release his bite on Officer Finch and the handler ultimately had to physically pull the dog off of Officer Finch and remove him from Officer Finch's location. CP at 282. Accordingly, it simply cannot be said that the dog was *under the control* of its handler when it bit Officer Finch. Although the dog and handler were in the same location, and although it was the handler's *responsibility* to remain in control of the dog at all times, *see* WAC 139-05-915(5), such control was clearly not maintained here,

9

otherwise Officer Finch would not have been attacked. Accordingly, a jury could so find and thereby determine that the exemption contained in RCW 16.08.040(2) does not apply.[6]

The majority holds that Rex "was lawfully applied" for purposes of RCW 16.08.040(2)'s strict liability exemption because Rex (1) "was specially trained for law enforcement work," (2) "was being used by a law enforcement agency," and (3) "was under the control of a dog handler when the bite occurred." Majority at 4.[7] But these are questions for the jury. In my view, neither the majority's premise—that the handler was in control of Rex when it bit Officer Finch—nor its conclusion based on that premise is valid.

Further, the majority's view leads to absurd results. Under the majority's view, a police dog deployed by its handler with a command to track and apprehend (find, bite and hold) a fleeing felon, which then tracked through a public park mauling small children along the way, would fall within the exception. I disagree. By its terms, the exemption applies only to a "lawful application." In the given example, the lawful application is the command to track, bite, and hold the fleeing felony suspect. There is *no* "application" where the dog strays and engages in aggressive conduct not ordered by the handler.

---

[6] Where there is no application, the inquiry regarding the lawfulness of such application does not arise.

[7] The majority cites *Germain v. City of Seattle*, 2016 WL 3017704 (W.D. Wash. May 25, 2016), as bolstering its view, but that case is distinguishable. *See* majority at 8. There, the police dog handler employed his police dog to apprehend a suspect who was attempting to flee. The federal district court held that the RCW 16.08.040(2) exemption applied and dismissed the defendant arrestee's RCW 16.08.040 strict liability claim against the city of Seattle. That is not the circumstance here.

10

Further, while the dog is attacking the children, the handler is *not in control* of the dog and, thus, there is no lawful application as to the action in question—the attack on the children. Similarly here, the attack on Officer Finch was beyond the scope of the handler's directive and the handler was not in control of Rex when Rex attacked Officer Finch. Under such circumstances, a jury could conclude that the exemption does not apply.

The majority reasons that as long as a police dog is employed in a specific use for which the dog was trained, it is necessarily "'lawful[ly] appli[ed],'" thereby triggering the exemption. Majority at 6. As explained above, I disagree that such initial deployment of a police dog necessarily immunizes any and all of the dog's conduct thereafter. The majority notes the specific uses that police dogs may be trained to carry out to include patrol and investigation, tracking, searches, and specific substance detection. *See id.* (citing to WAC 139-05-915(4)). Notably lacking from that list is the undirected attack of a police officer. Further, the regulation on which the majority relies expressly requires that a dog handler keep his dog under control at all times. *See* WAC 139-05-915(5).

The majority also notes that police dogs are trained to protect their handlers; thus, "in the event that the handler is attacked or injured[, the dog] will bite the assailant without a command to do so." Majority at 7 (citing WAC 139-05-915(4)(a)(xii), (d)). But there is no evidence that the handler was "attacked or injured." Thus, it cannot be said that the dog here acted consistent with its training. And in any event, this is for the jury to decide.

11

The majority asserts that the "parties largely agree" about the circumstances surrounding Officer Finch's injury. Majority at 3. In fact, the parties disagree about particulars surrounding the dog bite, particularly *where* Officer Finch was and *what* he was doing when the dog bit him. The County asserted at oral argument that a police dog is trained to bite without a command when the dog *perceives a threat* to the handler.[8] That assertion overstates the record. Notably, the County argued in its briefing that police dogs are trained to respond when the handler is *assaulted. See* Answer at 12 ("[W]here an officer is assaulted, police dogs are trained to attack and bite the assailant."); Suppl. Br. of Resp'ts at 9 ("[W]hen a canine handler is assaulted, police dogs are trained to protect the handler by attacking and biting the assailant.") The evidence the County points to regarding a police dog's training to protect its handler concerns certification tests for the handler and dog. In such tests, a decoy "assault[s]" the handler (after approaching and conversing with the handler for a while) in order to test the dog's protective response. CP at 148. There is no test noted for any *perceived* threat to the handler other than a physical assault. *See id.*

In the present case, there is no such physical assault on the police dog's handler, Deputy Ditrich. In my view, in the absence of such assault, the threshold requirement for a "perceived threat" to the handler (based on the County's evidence concerning police

---

[8] The County asserted at oral argument that police dogs are trained to bite in three circumstances: (1) pursuant to a bite and hold command when searching for or pursuing a fleeing suspect, (2) when a suspect attacks the police dog, and (3) when the police dog "perceives" a threat to the handler. *See* Wash. Supreme Court oral argument, *Finch v. Thurston County*, No. 91761-2 (Jan. 19, 2016), at 25 min., 15 sec. to 25 min., 50 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org.

dog training) is not met. On that basis, the police dog here was not acting in accordance with its training. Accordingly, a jury could find that there was no *application* of the dog (per its training) sufficient to trigger the RCW 16.08.040(2)'s statutory exemption.

Even if this court accepts the County's assertion at oral argument that the dog is trained to respond to a *perceived threat* to the handler (i.e., something short of an actual physical assault of the handler), summary judgment for the County would still be improper because the parties' different versions of Officer Finch's conduct at the time of the bite raises a material fact dispute about whether there was a threat to the handler. Deputy Ditrich's "K-9 Usage Report" states that when Deputy Ditrich recalled the police dog with the command "'here, here, here,'" "Officer Finch quickly came up to me and as he reached my location (just as K9 Rex was returning to me), he saw the suspect . . . and began shouting 'Show me your hands, Show me your hands!'" CP at 287. "K9 Rex took someone *approaching me from behind rapidly and shouting*, as a threat to me and immediately made contact with [i.e., bit] Officer Finch." *Id.* (emphasis added).

Officer Finch describes events differently, contending that at the relevant time he spoke in a "commanding voice but [he] wasn't yelling or . . . screaming." CP at 124. More importantly, Officer Finch contends that as he ordered the suspect, he was "stationary" and not moving, standing some "eight to ten feet" to the left of Deputy Ditrich and parallel to Deputy Ditrich as Officer Finch commanded the suspect. CP at 123. "At no time prior to being bit did I approach Deputy Ditrich giving 'Rex' a reason to think he needed to protect his handler." CP at 282. "At no time, did I get between

'Rex' and Deputy Ditrich, nor did I position myself between 'Rex' and the suspect. When I got attacked, I was standing still with my duty weapon [at the] low ready. *Id.* "[P]rior to getting attacked by 'Rex,' Deputy Ditrich, the suspect and I were [standing] in a triangle shape." *Id.*

The only evidence cited by the County concerning a police dog's training addressing protection of its handler indicates that the dog is trained to respond to a physical assault of the handler. Here, there is no physical assault on the handler. Even if this court accepts the County's position at oral argument that the police dog in this instance was responding to a perceived threat to its handler (short of a physical assault), summary judgment was not appropriate because the parties offer vastly different versions of Officer Finch's conduct leading up to the bite incident. Either way, the trial court's grant of summary judgment to the County was error.[9]

Further, in granting the County's summary judgment motion and denying Officer Finch's summary judgment motion, the trial court explained the basis of its ruling concerning the exemption question as follows:

> With regard to the argument on the lawful application of a police dog, the
> Court does find that where a police dog is being used in a situation such as

---

[9] The majority chides the dissent for "believ[ing] a properly trained canine officer faced with an armed attacker threatening its handler will not intervene until the attacker uses the weapon," and applauds any police dog that in such circumstance would "act to protect [its handler] before [the handler] is stabbed or shot." Majority at 7 n.4. The majority misconstrues the dissent's discussion, which focuses on the evidence available in the record concerning police dog training addressing handler protection. More to the point, whether the police dog here was "faced with an armed attacker threatening its handler" is a disputed material fact question, as discussed above.

14

this where the police dog is being used to aid an officer in searching an area, that's one thing, as opposed to having a police dog who normally goes home at night with their handler, getting out of the back yard and biting the neighbor. That in no way was the dog working at that point.

RP at 14-15. It is apparent that the trial court believed that so long as the dog is "working," that is, any time the dog is on duty and "aid[ing]" an officer, the exemption applies.[10] Id. But such a broad application of the exemption ignores the prerequisites for triggering the exemption and the parameters of that exemption, as discussed above.

The majority also notes that the RCW 16.08.040(2) exemption negates strict liability imposed by RCW 16.08.040(1) but otherwise does not confer immunity on the county as owner of the police dog, thereby leaving other remedies available to plaintiffs. But the fact that other remedies may be available to a person attacked by a police dog is irrelevant to the present inquiry, which concerns the particular triggers and parameters of the statutory exemption from strict liability for dog bites under RCW 16.08.040.

Legislative Intent

Although this case turns on the plain language of RCW 16.08.040(2), as discussed above, the record includes comments at a senate hearing by the bill's legislative sponsor

---

[10] The majority agrees with the trial court that the exemption applies whenever an on duty police dog has been deployed. The majority concludes that the police dog here was "lawfully applied" because it "was on duty performing [its] job duties under the control of a dog handler." Majority at 10. But, as discussed, while the dog was indeed on duty, the undirected biting of another officer is not one of the dog's job duties, and whether the dog was under the handler's control at the time of the bite is disputed. Notably, the majority acknowledges that a police dog being "under the control of a dog handler" is one of the prerequisites for application of the exemption. Majority at 5. But the majority merely assumes that this requirement is met, repeating throughout the opinion that the dog was "under the control of a dog handler," while ignoring that this is a disputed factual issue. See majority at 2, 4, 10. As discussed herein, a jury could find otherwise.

15

regarding the amendment's purpose. The sponsor indicated that the purpose of the amendment is to avoid frivolous lawsuits by arrestees. At the February 21, 2012 hearing before the Senate Judiciary Committee, the bill's sponsor, Representative Ann Rivers, identified the concern that this portion of the proposed legislation addressed as "the cottage industry that's popping up where criminals can sit in jail . . . and write frivolous lawsuits against municipalities . . . because dogs, police dogs, are . . . doing the job that we ask [it] to do." CP at 197. It is clear that the dog here was not "doing the job that we ask them to do" when it bit Officer Finch. It is also clear that the legislature intended the exemption to apply only when the dog is being *applied* by a handler and is under the control of the handler.

Moreover, the amendment was part of a larger bill that imposed civil penalties on persons who kill or injure police dogs. *See* LAWS OF 2012, ch. 94, §§ 1-2 (Substitute H.B. 2191, 62d Leg., Reg. Sess. (Wash. 2012)). The bill was prompted by two incidents in the sponsor's legislative district in which police dogs were stabbed to death by persons attempting to "evade arrest." CP at 175, 180 (comments by Representative Ann Rivers at the January 18, 2012 hearing before the House Public Safety and Preparedness Committee). The "heart of the bill" was shifting a portion of the substantial expense of acquiring and training a police dog (some $40,000) to the perpetrator responsible for the law enforcement agency's loss of the dog. CP at 176, 202-03. Clearly, the legislation addresses issues arising from the contact of police dogs with arrestees. Considering this

16

history, it is obvious that Officer Finch's case does not concern the type of claim that the amendment was intended to preclude.

Finally, requiring a more exacting construction of "lawful application" than the majority or the courts below employed comports with the policy considerations underlying this case. I acknowledge that police dogs provide "proven benefits for effective law enforcement." *Robinette v. Barnes*, 854 F.2d 909, 914 (6th Cir. 1988); *see also id.* at 914 n.6 (noting police dogs are "well-known" for their ability to track and apprehend criminals, detect drugs, and locate missing persons and lost articles). Courts have acknowledged that police dogs function as the handling officer's tool and "'weapon.'" *Andrade v. City of Burlingame*, 847 F. Supp. 760, 764 (N.D. Cal. 1994) (police dog is "one 'weapon' in [the handler's] arsenal"); *Weekly v. City of Mesa*, 181 Ariz. App. 159, 165, 888 P.2d 1346 (1994) ("no difference between a police officer directing a dog to attack a person" and the officer "directing a blow at a person with a baton"); *see also* CP at 183-85 (testimony before house committee describing police dogs as important tools used by officers and "an extension of the officer").

But police dogs can also be "threatening" and "dangerous." *Robinette*, 854 F.2d at 913 (acknowledging that police dog can be a dangerous law enforcement tool: "The dogs' ability to aid law enforcement would be minimal if they did not possess this trait").[11] And the use of police dogs has on occasion caused serious injury and even

---

[11] *Cf. State v. Hoeldt*, 139 Wn. App. 225, 230, 160 P.3d 55 (2007) ("Because a dog is an instrument that can be used to cause death or substantial bodily harm, we hold that a dog can be a "deadly weapon" under RCW 9A.04.110(6).").

death. *See, e.g., Watkins v. City of Oakland*, 145 F.3d 1087, 1090-91 (9th Cir. 1998) (victim of police dog attack sustained severe lacerations, fractures, and tendon damage necessitating two skin graft surgeries); *Robinette*, 854 F.2d at 911 (victim of police dog attack killed when bitten on the neck). The fact that police dogs (i.e., thinking weapons) can, on occasion, make mistakes is an unfortunate reality. *See Robinette*, 854 F.2d at 912 (police dog acted "consistent with its training" and yet accidentally killed suspect); *see also Andrade*, 847 F. Supp. at 762 (police dog attacked two children during traffic stop, biting the girls' heads and causing injuries and psychological trauma). Law enforcement agencies' decision to utilize such tools must be balanced against the risk to the public of unintended attacks. The legislature has balanced such risks by requiring exacting and limiting conditions to trigger the exemption at issue here. In my view, the courts below and the majority's approach too broadly apply RCW 16.08.040(2)'s exemption any time a trained police dog is on duty. That is not what the plain language of the statute requires.

## Conclusion

RCW 16.08.040(2) provides an exemption from RCW 16.08.040(1)'s strict liability for dog bite injuries where the bite results from a "lawful application of a police dog." Here, taking the facts in the light most favorable to Officer Finch, the police dog bite to Officer Finch occurred when the dog was not under the handler's control and when the dog strayed from the handler's directives. In my view, under such facts, the bite does not fall within the "lawful *application* of a police dog" necessary to trigger the

18

exemption. The disputed facts concerning the circumstances surrounding the dog bite raise a fact question on this issue foreclosing summary judgment. The trial court and Court of Appeals erred in determining otherwise. The court should reverse the trial court's summary judgment dismissal of Officer Finch's strict liability claim and remand for further proceedings.

For these reasons, I dissent.

No. 91761-2
(Madsen, C.J., dissenting)

Madsen, C.J.

Johnson, J.

_____, J.

Wiggins, J.