NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

MAR 19 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JENNI ELLIS,

                    Plaintiff-Appellant,

  v.

PIERCE COUNTY, LEVI REDDING and
'JANE DOE' REDDING,

                    Defendants-Appellees.

No.   24-1361

D.C. No.
3:22-cv-05142-BHS

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
Benjamin Settle, District Judge, Presiding

Argued and Submitted December 5, 2024
Seattle, Washington

Before:  BOGGS,[**] R. NELSON, and MCKEOWN, Circuit Judges.
Partial Dissent by R. NELSON.

This Fourth Amendment excessive-force case involves the deployment of a

"bite-and-hold" K9 after law enforcement responded to a 911 domestic-assault call.

---

        [*]        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

        [**]        The Honorable Danny J. Boggs, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

When three Pierce County Sheriff's deputies arrived on scene, Eric Vankirk reported that his intoxicated girlfriend, plaintiff Jenni Ellis, had punched him in the eye and hit his teenage son, who was trying to break up the fight. Ellis had walked out of the house in her slippers and pajamas in the pouring rain 10–15 minutes before the deputies arrived. Vankirk and his son told the deputies that Ellis was unarmed, carrying a bottle of alcohol, and did not pose a threat. The deputies were frustrated because Vankirk had called 911 about Ellis before. Vankirk heard one say, "This time, we are going to teach her a lesson."

After the deputies determined that probable cause existed to arrest Ellis, defendant Deputy Levi Redding arrived on scene and deployed his partner, K9 Zepp, "to locate Jenni." Redding said that he stood outside the house and announced that the area was going to be searched by a police dog, and that if Ellis did not give up, the dog would find and possibly bite her. Redding then put K9 Zepp in his tracking harness with a 30-foot lead and gave K9 Zepp "his search command." After searching for 12 minutes with no success, K9 Zepp was taken back to the house, given a second search command, and soon "began to show extreme positive indicators" that a person was in very close proximity. K9 Zepp then darted around a tall hedge row and into a neighboring yard. Redding lost sight of him, "felt the leash go slack," and heard a female scream.

2

Redding came around the hedge and saw K9 Zepp biting and holding Ellis's left arm, trying to pull her out from underneath a trailered boat, while Ellis was attempting to fend the dog off with her right hand. Redding admits that he could have commanded K9 Zepp to stop biting Ellis and release her, but he chose not to. Instead, he gave repeated commands to Ellis "to show me her hands" and "let go of" K9 Zepp. While the exact duration of the bite is unclear, it ranged from to 25–41 seconds.

Ellis testified that she was not fleeing or hiding from the police, never heard a police K9 warning, was not carrying a weapon or an alcohol bottle, and never hid under the boat. Rather, she had been "walking around . . . in the neighborhood" to "calm down" and, after her phone died, she decided to walk back to her house when K9 Zepp attacked her in the neighbor's yard. Ellis was taken to the hospital after the attack and has long-term damage to her left arm.

Ellis filed a § 1983 claim against Redding for violating her Fourth Amendment rights; state negligence claims against Redding and Pierce County; and vicarious-liability claims against Pierce County arising from the training and deployment of K9 Zepp. Defendants Redding and Pierce County moved for summary judgment. The district court dismissed the negligence claim against Pierce County but denied summary judgment on all other claims. Defendants filed this interlocutory appeal.

# I.    Jurisdiction and Standard of Review

We typically lack jurisdiction to hear interlocutory appeals from denials of summary judgment, but an exception exists for the review of legal issues in denials based on qualified immunity. *Hart v. City of Redwood City*, 99 F.4th 543, 547 (9th Cir. 2024); 28 U.S.C. § 1291. The question of whether a law-enforcement officer's conduct violated the Fourth Amendment is a legal issue. *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022) (citing *Plumhoff v. Rickard*, 572 U.S. 765, 773 (2014)). As such, we have jurisdiction.

We review de novo a district court's denial of summary judgment on qualified-immunity grounds. *Williamson,* 23 F.4th at 1151. Qualified immunity protects government officials from suit unless 1) they violated a federal statutory or constitutional right, and 2) the unlawfulness of their conduct was clearly established at the time. *Hart*, 99 F.4th at 548. We take the facts in the light most favorable to the plaintiff, and we review de novo whether defendants violated a constitutional right and whether the unlawfulness of their conduct was clearly established.

# II.    Excessive Force

"The Fourth Amendment prohibits unreasonable 'seizures' to safeguard '[t]he right of the people to be secure in their persons.'" *Torres v. Madrid*, 592 U.S. 306, 309 (2021). "[T]he appropriate inquiry is whether the challenged conduct *objectively* manifests an intent to restrain . . . ." *Id*. at 317. Redding does not dispute that "*after*

4

he first saw K9 Zepp biting Ellis, he intended for K9 Zepp to continue biting her" and "'allowed' K9 Zepp to continue biting and pulling Ellis." This establishes an objective intent to restrain, making K9 Zepp's bite-and-hold a seizure.

Determining the reasonableness of a seizure requires a careful balancing of the intrusion on the individual's Fourth Amendment interests and the countervailing governmental interests at stake. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Courts must weigh 1) the severity of the crime at issue; 2) whether the suspect poses an immediate threat to the safety of the officers or others; and 3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.*; *Chew v. Gates,* 27 F.3d 1432, 1440 (9th Cir. 1994). Safety is "the most important single element of the three specified factors," and we judge the reasonableness of force from the perspective of a reasonable officer on the scene. *Lowry v. City of San Diego*, 858 F.3d 1248, 1258 (9th Cir. 2017) (quoting *Chew*, 27 F.3d at 1441). Whether an officer's actions are objectively unreasonable must be considered under the "totality of the circumstances." *Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019).

Applying the *Graham* excessive-force factors, the district court held that there were genuine issues of material fact as to 1) whether the severity of Ellis's crime warranted a K9 bite-and-hold; 2) whether the officers' safety was actually threatened; and 3) whether Ellis resisted arrest or posed a risk of flight. We agree.

First, while domestic violence is a serious crime in Washington state necessitating "early intervention by law enforcement," RCW 10.99.010, the district court correctly recognized that domestic-violence legislation does not authorize a police officer to effect an arrest by any means. The incident report described the injuries sustained by Vankirk and his son as "Minor," and photographs taken on scene "display no visible injuries." Reading this record in the light most favorable to Ellis, the district court rightly held there is a factual dispute whether her offense rose to the level of letting a police K9 bite, hold, and pull on her arm.

Second, Redding says that he encountered Ellis in a vulnerable position, being bitten on one arm and trying to push the dog's head away with the other. Instead of commanding the dog to release its bite, Redding commanded Ellis to let go of the dog and raise her hands. Objectively, it would be physically impossible for her to raise her left hand—let alone threaten his or other officers' safety. Under these circumstances, a jury could find that a reasonable officer would not have felt any immediate threat to his safety.

Third, there is a factual dispute whether Ellis was fleeing from the police. Redding and K9 Zepp checked under the boat multiple times and never found Ellis hiding there. Even if she were hiding, there is no testimony that she tried to escape, resist arrest, or assault K9 Zepp or Redding when they pulled her out from under the boat (if that is where she was). In fact, the two deputies who arrested and cuffed Ellis

6

testified that she did not resist them. Hearing this, a jury could reasonably find that she did not pose any flight risk warranting the K9 bite-and-hold.

### III. Clearly Established Right

Even if there is an unconstitutional use of excessive force, government officials performing discretionary functions are entitled to qualified immunity unless the unlawfulness of their conduct was clearly established at the time. *Dist. of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018). A clearly established right is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). However, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Qualified-immunity analysis first requires that we determine the challenged conduct. Redding argues that the challenged conduct is the "spontaneous, uncommanded and unexpected contact and bite by the leashed K9." But we focus on his decision to deploy K9 Zepp and then not command the dog to release his bite.

It is undisputed that Washington police patrol dogs are trained in the "bite-and-hold" method of apprehension. This method trains a K9 to bite-and-hold after a

7

search command unless it is restrained from doing so or commanded not to. That is exactly what happened here. Though Redding argues that "I at no time gave K9 Zepp a command to bite Plaintiff but only to search for her and later to release her," K9 Zepp was trained, when given the search command, to bite-and-hold a person the end of a track, whether they were fleeing, fighting, or lying still. In fact, when asked why K9 Zepp bit Ellis at the end of the search, Redding replied, "That's what he's trained to do." Similarly, Redding's account that he only commanded K9 Zepp "to search . . . and later to release" makes no sense unless the command to "release" follows a bite.

Since 1994, we have held that the use of a police dog in an arrest is subject to an excessive-force analysis. *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994). Though that court ultimately affirmed a finding of qualified immunity, it held that reasonableness-of-force analysis applies equally "to any arrest situation where force is used, whether it involves physical restraint, use of a baton, use of a gun, or use of a dog. We do not believe that a more particularized expression of the law is necessary for law enforcement officials using police dogs to understand that under some circumstances the use of such a 'weapon' might become unlawful." *Id*.

And here we do have a more particularized expression of the law regarding the use of police dogs. In *Watkins v. City of Oakland*, officers responded to a silent alarm in a commercial building, saw a person run inside, and ordered him to

surrender or they would release a dog. 145 F.3d 1087, 1090 (9th Cir. 1998). When Watkins did not surrender, the dog located him hiding in a car and bit him on the foot. *Id*. The officer did not "call off" the dog, and Watkins could not show his hands because he was "resisting the dog and recoiling from the pain." *Id*. Because the officer pulled Watkins out of the car while letting the dog continue to bite for approximately 30 seconds, the court denied qualified immunity and held that it was "clearly established that excessive duration of the bite and improper encouragement of a continuation of the attack by officers could constitute excessive force." *Id.* at 1093.

As in *Watkins*, it was Redding's failure "to call the dog off" that "improperly encouraged the continuation of the attack." A bite-and-hold dog is trained to keep biting until told to stop, and Redding never commanded K9 Zepp to stop biting Ellis, who could not surrender (or let go of the dog) because of the bite-and-hold. After K9 Zepp attacked Ellis, Redding let the bite last for a similar or longer duration than the *Watkins* bite. The unlawfulness of Redding's conduct was clearly established, so he is not entitled to qualified immunity.

## IV.     State Claims

In Washington, a police officer "who uses a police dog in the line of duty in good faith" is immune from civil action for damages arising out of such use. RCW 4.24.410 (2). This provision does not preclude plaintiffs from pursuing causes of

9

action such as negligence, civil-rights violations, or assault, *Finch v. Thurston Cnty.*, 186 Wn.2d 744, 752 (2016) (citing *Arnold v. Laird*, 94 Wn.2d 867, 870–71 (1980)), and Washington state courts have recognized "the potential for tort liability based on the negligent performance of law enforcement activities." *Beltran-Serrano v. City of Tacoma*, 193 Wn.2d 537, 543 (2019). Still, a plaintiff's claim of negligence may not be based on an intentional act, like the use of excessive force, and therefore is limited to negligent acts leading up to the ultimate use of force. *Id*. at 546. Here, because Ellis's negligence claims are based on the intentional act of excessive force, her state claims fail.

The denial of summary judgement and qualified immunity for excessive force in violation of the Fourth Amendment is AFFIRMED. We REVERSE the district court on the independent state negligence and immunity claims.

*Ellis v. County of Pierce*, No. 24-1361

R. Nelson, J., dissenting in part:

The majority errs two ways in denying qualified immunity to Deputy Redding. I dissent.[1]

First, the majority neglects the relevant legal standard. On summary judgment, any genuinely disputed facts must be construed in Jenni Ellis's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). But only "material" facts preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The applicable substantive law determines which facts are material. *Id.*

Under the Fourth Amendment, the excessiveness of an officer's force "must be judged from the perspective of a reasonable officer on the scene." *Graham v. Connor*, 490 U.S. 386, 396 (1989). That is, "only the facts that were knowable to the . . . officers" are relevant. *White v. Pauly*, 580 U.S. 73, 77 (2017) (per curiam).

Thus, contrary to the majority's suggestion, it doesn't matter whether Ellis was "actually" fleeing, resisting arrest, or posing a threat to Redding or her victims. To the extent those questions depend on facts that weren't available to Redding,

---

[1] I agree that state law immunizes Redding from Ellis's state-law claims—though I do not agree with the majority's reasoning on that issue. In my view, Ellis failed to show that Redding acted in bad faith or that his dog was not under the control of a dog handler. *See* Wash. Rev. Code § 4.24.410(2); *Finch v. Thurston County*, 381 P.3d 46, 48 (Wash. 2016).

1

they're immaterial. What matters is Redding's "contemporaneous knowledge"—and whether, in light of that knowledge, a reasonable officer would use a dog to find, secure, and hold Ellis. *Miller v. Clark County*, 340 F.3d 959, 964–65 & n.9 (9th Cir. 2003) (quotation omitted); *White*, 580 U.S. at 77. What is undisputed and material is that Redding was told that Ellis was violent, potentially armed, fleeing arrest, and likely to return to her victims if not arrested. Those facts—not the facts that Redding was unaware of—are what matter.

Second, on any version of the facts, Redding did not violate clearly established law. Under our precedent, it's unreasonable to "direct a police dog to continue biting a suspect who has fully surrendered and is under the officer's control." *Hernandez v. Town of Gilbert*, 989 F.3d 739, 745 (9th Cir. 2021). All of our cases coalesce around this standard. We created the standard in our first dog-bite case. *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994). Since then, every time we've deemed the prolongation of a dog bite unconstitutional, we've emphasized that the arrestee had "fully surrendered" or was otherwise "under officer control." *Rosenbaum v. City of San Jose*, 107 F.4th 919, 924–26 (9th Cir. 2024); *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) (en banc) (arrestee physically restrained); *LaLonde v. County of Riverside*, 204 F.3d 947, 961 (9th Cir. 2000) (arrestee "surrenders and is rendered helpless"); *Watkins v. City of Oakland*, 145 F.3d 1087, 1090, 1093 (9th Cir. 1998) (arrestee "obviously helpless and surrounded by police officers with their guns

2

drawn"). And when those two facts aren't present, we've granted qualified immunity or upheld the continued dog bite. *Hernandez*, 989 F.3d at 745–47; *Miller*, 340 F.3d at 965–66 & n.11; *Chew v. Gates*, 27 F.3d 1432, 1448–49 (9th Cir. 1994).

"No matter how carefully a reasonable officer read [our caselaw] beforehand," he couldn't know that it's unlawful to use a dog to secure an arrestee who hasn't fully surrendered. *See City & Cnty. of S.F. v. Sheehan*, 575 U.S. 600, 616 (2015). And on no version of the facts had Ellis "fully surrendered" or come "under officer control" when Redding allowed the dog to continue biting her. Redding is thus entitled to qualified immunity. I respectfully dissent.